Edward **BENVENUTO,** Eugene **Brown, James Chester, Robert Green, John Noschese and James Short, as Trustees of the Allied Security Health & Welfare Fund, Plaintiffs,**

v.

Irwin N. **SCHNEIDER, individually and d/b/a Schneider & Taubman, Daniel Cunningham and Nunzio Nicolosi, a/k/a Ted Nicolosi, Defendants.**

No. CV 85–1664.

United States District Court, E.D. New York.

Jan. 26, 1988.

Gerald V. Dandeneau, Melville, N.Y., for plaintiffs.

Vincent A. Pirrone, Long Beach, N.Y., for Nicolosi.

Murray & Skoff, New York City, for Irwin N. Schneider and Schneider & Taubman.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

WEXLER, District Judge.

#### INTRODUCTORY STATEMENT

This matter consists of three consolidated cases: *Brown v. Tomasso, et al.,* CV 84–2634 (LDW); *Brock v. Tomasso, et al.,*

CV 84–4280 (LDW); and *Benvenuto v. Schneider, et al.,* CV 85–1664 (LDW). The cases were consolidated for trial before this Court and the Court pursuant to Fed.R. Civ.P. 52(a) hereby makes the following findings of fact and conclusions of law in case number CV 85–1664 as it relates to the plaintiff Trustees in their action against defendants Schneider & Taubman, Irwin Schneider, Daniel Cunningham and Nunzio Nicolosi.

## FINDINGS OF FACT

1. The Allied Security Health & Welfare Fund ("the Fund") is an employee welfare benefit plan established by the Allied International Union ("Allied"), a labor organization representing security guards in the New York City metropolitan area, Washington, D.C., and portions of Connecticut. As such, the Fund is a Taft–Hartley benefit fund, for the purposes of providing medical, dental, optometrical, and life insurance, and at various diverse times, pre-paid legal benefits for its members. The Fund's source of income is derived from those employers that have entered into collective bargaining agreements with Allied. At all times relevant herein, the Fund has occupied offices at 275 Warner Avenue, Roslyn Heights, New York, which is also the address of Allied.

2. In the mid 1970's, Daniel Cunningham became President of Allied and Trustee of the Fund. In 1982 Cunningham was sentenced to five years imprisonment for a variety of union and Fund crimes. *United States v. Cunningham,* CR 81–480–01 (Glasser, J. E.D.N.Y.). Anthony Tomasso succeeded Cunningham as Allied's President, Union Trustee and Manager of the Fund. In 1983, management of the Fund which had been operating under a single Union Trustee, Anthony Tomasso, and Theodore Nicolosi, a/k/a Nunzio "Ted" Nicolosi, representing the employer was changed to provide for two Union trustees and two employer trustees.

3. Nicolosi was selected by Cunningham in 1976 as the employer trustee because Cunningham knew Nicolosi was easily manipulated. Cunningham knew he could control Nicolosi and realized that Nicolosi would comply with his wishes, regardless of the interest of the Fund. Nicolosi admitted that as trustee he never reviewed or even saw the trust documents and that he merely did whatever Cunningham told him to do. Nicolosi testified as follows:

> The Court: You did whatever Mr. Cunningham told you to do, in other words?
> Nicolosi: Yes, because he's the president of the Union. I knew nothing, you know —.

Nicolosi also indicated that as Secretary he signed minutes that were not true on instruction from Mr. Cunningham.

4. On July 29, 1981, the Fund, by the defendant trustees Cunningham and Nicolosi, contracted with the Law Firm of Schneider & Taubman (the "Law Firm"), located at 98 Cuttermill Road, Great Neck, New York, for the purposes of providing a pre-paid legal plan to eligible members of Allied. The Law Firm was paid $20,000.00 per month and a $20,000.00 start-up fee.

5. The contract between the Fund and the Law Firm was in existence from April 1, 1981 to November 15, 1982. Over this 15½ month period, the total amount paid to the Law Firm was $330,000.00. The Law Firm performed its services without the use or retention of outside attorneys.

6. When the contract between the Fund and the Law Firm was in existence the Fund had 2000 members. Twenty percent of these members lived outside the metropolitan area in parts of New Jersey and Connecticut.

7. The Trustees, Cunningham and Nicolosi, failed to interview or seek other bids from any other law firm for the prepaid legal plan, failed to monitor the utilization of the firm of Schneider & Taubman, failed to analyze the amount being paid to Schneider & Taubman in relationship to the services which were being provided to eligible members, and failed to adequately insure that the assets of the plan were being utilized properly.

8. At the time that the contract was in effect between the Fund and the Law Firm, Trustee Nicolosi did not know of the con-

tents of the contract, or that the Fund had paid the Law Firm $330,000.00 over the 15½ month period (August 1, 1981—November 15, 1982).

9. As the prepaid legal provider, Schneider & Taubman, which was made up of general partners Irwin Schneider and Philip Taubman, several associates, and a clerical staff, had no background whatsoever in the providing of a prepaid legal plan. Philip Taubman was not named as a defendant in these proceedings.

10. The services provided by the Law Firm were performed, at the beginning, by Gary Ettelman, an associate of the firm, who was not admitted to practice law until February, 1982, some seven months after the commencement of the prepaid legal plan, and Lois Campbell, another associate of the firm. Their work was devoted predominantly to the answering of telephone calls, giving advice over the telephone, and writing a quarterly newsletter which was to be sent to the members of the plan. There is doubt, however, as to whether the booklets were ever received by the membership and there is no indication that the firm even attempted to obtain a complete list of names and addresses of all eligible members of the plan.

11. A utilization summary report submitted in August 1982 calculated the number of cases handled by the Law Firm for the six month period ending July 1982. The summary revealed that Schneider & Taubman had provided benefits to 262 participants of which only 37 were characterized as major cases. The so called major cases included landlord and tenant problems, minor crime situations, workers compensation cases, matrimonial problems, and some minor estate planning. The balance of the 225 cases were form letters introducing the Law Firm to the members of the Union, advice as to wills and letter writing.

12. The Law Firm provided a booklet of rights under the prepaid legal plan, but no more than 289 of the 2000 members received the booklet.

13. The Law Firm kept no times records for any members of the firm concerning the work provided in consideration for the monthly retainer.

14. Mr. Ettelman, who handled the majority of the work of the firm, could not identify and separate the work performed by him before and after he was admitted to the Bar in February 1982. The contract was in effect from August 1, 1981—November 15, 1982.

15. An expert testified that the usual rate for legal service plans is between $1.50 and $4.00 per month for eligible participants. The Court finds under the circumstances of this case $1.50 would have been a proper rate for the type of services rendered by the Law Firm.

16. Since 20% of the Fund's 2000 members lived outside the metropolitan area, the calculation of the amount to be paid per eligible beneficiary should be based upon 1600 participants.

17. Based upon the figure of 1600 participants, at the rate of $1.50 per month, per participant, Schneider & Taubman should have been paid $2400.00 per month, which, for a period of 15.5 months would have amounted to $37,200.00. The law firm of Schneider & Taubman instead received $330,000.00, which is an overpayment of $292,800.00.

### CONCLUSIONS OF LAW

1. This Court has jurisdiction over this action pursuant to § 502(e)(1) of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1132(e)(1). Venue is proper in this district pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2). The plaintiffs have standing to maintain this action under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).

2. The Fund is an employee welfare plan within the meaning of ERISA, § 3(1), 29 U.S.C. § 1002(1).

3. As Trustees of the Fund, defendants Daniel Cunningham and Nunzio "Ted" Nicolosi were fiduciaries within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21).

4. The law firm of Schneider & Taubman and Irwin Schneider were parties in interest as defined within the meaning of

**54**

ERISA § 3(14)(B), and as such are subject to the jurisdiction and findings of this Court as provided for in § 502(a)(3), 29 U.S.C. § 1132(a)(3).

5. It was the intent of Congress that in order to insure the protection of employee benefit plans, and in order to insure the protection of the beneficiaries of the employee benefit plans, "safeguards be established with respect to the establishment, operation and administration of such plans". ERISA § 2(a), 29 U.S.C. § 1001(a). Therefore, ERISA was enacted as a comprehensive statute designed to "protect ... the interest of participants in employee benefit plans and their beneficiaries ... by establishing standards of conduct, responsibility, and obligations for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the federal courts." ERISA § 2(b), 29 U.S.C. § 1001(b).

6. To advance the purpose and intent of Congress in enacting ERISA, the fiduciary standards of ERISA were based to a great part upon the fiduciary obligations found under the common law of trusts. These obligations have been federalized and codified with recognition given to the special purposes and characteristics of employee benefit plans. To assist in the foregoing, ERISA has been afforded liberal construction and implementation by the Courts.

7. Under § 404 of ERISA, 29 U.S.C. § 1104, a fiduciary's duty is to act with the "care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an interprise of a like character and with like aims ..." ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B).

8. In addition to the general fiduciary obligations that a Trustee must follow under ERISA, as established by the common law of trusts, the statute discusses certain types of transactions between a plan and related persons known as "parties in interest." These transactions are subject to scrutiny because they are susceptible to abuse. Such transactions are generally prohibited under § 406(a) of ERISA, 29 U.S.C. § 1106(a). To avoid the restriction of § 406(a), transactions between trustees and parties in interest must meet the requirements of one or more of the narrow exemptions provided by § 408, 29 U.S.C. § 1108.

■ 9. The Trustees of the Fund breached their fiduciary duties by failing to act prudently and reasonably in the retention of Schneider & Taubman as their prepaid legal provider and were in violation of ERISA § 404(a)(1)(A) & (B) and 29 U.S.C. § 1104(a)(1)(A) & (B) by failing to discharge their duties exclusively in the interest of the participants with the care, skill, prudence and diligence that a prudent man should have employed.

■ 10. The law firm of Schneider & Taubman and Irwin Schneider individually participated with the Trustees in the breach of the Trustees' fiduciary duties and are equally responsible with the breaching fiduciaries for the losses suffered by the Fund as the result of the improper and excessive payments made by the Fund to the law firm of Schneider & Taubman.

■ 11. The law firm of Schneider & Taubman and Irwin Schneider individually received excessive amounts of money in relationship to the services rendered and benefits received. The law firm of Schneider & Taubman and Irwin Schneider individually knew by their actions that they were receiving money in violation of ERISA and participated with the Trustees in breaching fiduciary responsibilities by receiving improper and excessive payment made by the Fund. The Law Firm must be treated as participating under the common law of trusts and must be accountable for breaches committed by the fiduciaries of the Fund.

### RELIEF

1. Section 409(a) of ERISA, 29 U.S.C. § 1109(a), provides that a fiduciary who breaches duties imposed by ERISA "shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore such plan any profits of such fiduciary which have

been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the Court may deem appropriate, including removal of such fiduciary." Consistent with the broad language of ERISA § 409(a), the remedial nature of ERISA, and the liberal construction traditionally given to the Act, this Court has broad discretion in determining the appropriate relief to be accorded the Fund.

2. The non-fiduciaries, the law firm of Schneider & Taubman and Irwin Schneider as parties in interest, are equally liable jointly and severally with the breaching fiduciaries, defendants Cunningham and Nicolosi, inasmuch as they participated in the misconduct and breaches of the Trustee's fiduciary duties, and benefited directly from these breaches of fiduciary duty knowingly or with the constructive knowledge that what they were doing was improper.

3. With respect to the legal services program, this Court holds that the defendants Daniel Cunningham, Nunzio "Ted" Nicolosi, the law firm of Schneider & Taubman, and Irwin Schneider, are jointly and severally liable to the Fund in the amount of $292,800, together with the pre-judgment rate of interest at the adjusted prime rate set by the Secretary of the Treasury pursuant to 26 U.S.C. §§ 6621, 6622.

4. In accordance with ERISA § 502(g), 29 U.S.C. § 1132(g), this Court has the discretion to allow a reasonable attorneys fee and costs of this action to the plaintiffs for the maintenance of this law suit when seeking monetary relief to the Fund as requested herein. As such, this Court will require the defendants to compensate the attorneys for the plaintiffs for reasonable attorneys fees incurred by the counsel for the plaintiff in the maintenance of this action, and their attempts to recover the excessive funds and excessive monies paid by the Fund to the defendants.

SO ORDERED.