948 F.2d 1219
 60 USLW 2451, 14 Employee Benefits Cas. 2251
 CARRIERS CONTAINER COUNCIL, INC.,
Plaintiff-Counterclaim-Defendant-Appellant, Cross-Appellee,
v.
MOBILE STEAMSHIP ASSOC., INC., INTERNATIONAL LONGSHOREMAN'S
ASSOC., AFL-CIO PENSION PLAN AND TRUST and its trustees F.D.
Alspaugh, Arthur W. Stratton, Hartwell Ludlow, Ned
Mattingly, Felix Cleveland, Henry L. Clarke, Albert Walton,
Jr., Seymour Irby,
Defendants-Counterclaim-Plaintiffs-Appellees, Cross-Appellants.
 No. 90-7825.
 United States Court of Appeals,
Eleventh Circuit.
 Dec. 19, 1991.
 
 Lyons, Pipes & Cook, PC, Westley Pipes, Mobile, Ala., Lambos & Giardino, Peter C. Lambos, Nicholas Maglaras, New York City, for Carriers Container Council, Inc.
 Armbrecht, Jackson, Demouy, Crowe, Holmes & Reeves, William B. Harvey, Edward A. Dean, Figures, Jackson & Harris, Michael A. Figures, Mobile, Ala., for Mobile S.S. Ass'n, et al.
 Appeals from the United States District Court for the Southern District of Alabama.
 Before ANDERSON, Circuit Judge, CLARK*, Senior Circuit Judge, and BROWN**, Senior District Judge.
 ANDERSON, Circuit Judge:
 
 
 1
 This case involves a dispute over the interest on delinquent withdrawal liability payments owed by an employer, Carriers Container Council, Inc. ("CCC"), to a pension plan, Mobile Steamship Association, Inc., et al. ("the Plan"), upon the employer's withdrawal from the plan. The district court held, inter alia, that under 29 U.S.C. § 1132(g)(2), CCC must pay simple interest on the sum of its overdue payments, calculated from the due date of the first withdrawal liability installment to the date of judgment on the overdue amounts.
 
 
 2
 Both parties appeal the district court's judgment, raising the following issues. First, CCC contends that the interest should run on each delinquent withdrawal liability installment payment from each respective due date. The Plan, on the other hand, argues that the interest should run on CCC's entire withdrawal liability from the date of the Plan's initial demand for withdrawal liability. Second, the Plan contends that the § 1132(g)(2) withdrawal liability interest should be compounded under 26 U.S.C. § 6622. Third, the Plan argues that the doubling provisions of § 1132(g)(2) apply to post-judgment interest as well as to pre-judgment interest. Finally, the Plan contests the district court's decision to credit CCC with interest it already paid the Plan pursuant to a prior judgment.
 
 I. PROCEDURAL BACKGROUND
 
 3
 By letter dated December 21, 1987, the Plan presented CCC with a demand for the payment of withdrawal liability in the amount of $1,236,836 pursuant to the Multiemployer Pension Plan Amendments Act of 1980, ERISA § 4201, 29 U.S.C. § 1381. The Plan's payment schedule required thirteen quarterly payments of $109,331.36 each plus a final payment of $56,828.93.[1] The first quarterly installment was due on February 20, 1988. CCC refused to pay on the ground that it was not an employer subject to withdrawal liability, and it filed a declaratory judgment suit in district court on February 4, 1988, pursuant to 29 U.S.C. § 1451. Furthermore, CCC initiated arbitration of this dispute pursuant to the mandatory arbitration provision of 29 U.S.C. § 1401(a)(1).
 
 
 4
 On March 21, 1989, the district court held, inter alia, that CCC was an employer liable for withdrawal liability, thereby directing the parties to proceed with the arbitration for the purpose of determining the amount of CCC's withdrawal liability. See Carriers Container Council, Inc. v. Mobile S.S. Ass'n--Int'l Longshoreman's Ass'n, No. 8801195-BH-C (S.D.Ala. March 21, 1989). However, in a supplemental ruling on May 5, 1989, the district court denied the Plan's motion for an order directing CCC to make interim payments to the Plan during the period of arbitration. In addition, the court denied the Plan's request for legal fees and liquidated damages/interest under 29 U.S.C. § 1132(g)(2). See Carriers Container Council, Inc. v. Mobile S.S. Ass'n--Int'l Longshoreman's Ass'n, No. 8801195-BH-C (S.D.Ala. May 5, 1989).
 
 
 5
 On May 9-10, 1989, CCC paid the first five delinquent installments and interest on the delinquent installments in the amount of $39,326.64, calculated under 29 U.S.C. § 1399(c)(3). CCC paid the sixth installment payment, due May 20, 1989, on May 22, 1989. The parties do not contest the district court's determination of interest, see Carriers Container Council, Inc. v. Mobile S.S. Ass'n--Int'l Longshoreman's Ass'n, No. 88-0095-BH (S.D.Ala. October 15, 1990) at 8, for the 2-day tardiness of that payment. CCC has timely paid the remaining installments.
 
 
 6
 On appeal of the district court's March 21, 1989, and May 5, 1989, Orders, this court affirmed the determination that CCC was an employer subject to withdrawal liability, but it held that the district court should have ordered CCC to make interim payments pending arbitration or judicial review. Furthermore, this court reversed and remanded the district court's ruling denying legal fees and liquidated damages/interest. Carriers Container Council, Inc. v. Mobile S.S. Ass'n--Int'l Longshoreman's Ass'n, 896 F.2d 1330, 1346-47 (11th Cir.), cert. denied, --- U.S. ----, 111 S.Ct. 308, 112 L.Ed.2d 261 (1990).
 
 
 7
 On remand, the parties disputed the amount of § 1132(g)(2) interest due the Plan on the five overdue withdrawal payments. CCC argued that it owed the interest on each of the five delinquent installments as it accrued from their respective due dates. The Plan contended that the interest accrued on the total withdrawal liability principal.
 
 
 8
 In its orders of October 15 and November 14, 1990, the district court held the following: (1) the § 1132(g)(2) interest on the five delinquent withdrawal liability payments accrued from the due date of the first withdrawal liability payment, February 20, 1988, until the date of judgment, May 5, 1989; (2) a daily compounding of interest under 26 U.S.C. § 6622 does not apply to the calculation of CCC's § 1132(g)(2) interest liability; (3) post-judgment interest is governed by 28 U.S.C. § 1961, and thus not subject to doubling under § 1132(g)(2); and (4) the parties must set off from the total amount of interest due by CCC the $39,326.64 in interest pursuant to 29 U.S.C. § 1399(c)(3) that CCC had already paid pursuant to the May 5, 1989 judgment. The parties appeal from that judgment.
 
 II. STATUTES
 
 9
 Under 29 U.S.C. § 1381, an employer who withdraws from a multiemployer pension plan is liable to the plan for a certain amount as determined under 29 U.S.C. § 1391. Generally, a payment schedule includes amortization of the withdrawal liability amount in level annual payments with both principal and interest components. 29 U.S.C. § 1399(c)(1)(A)(i).
 
 
 10
 Each annual payment is payable in four equal installments due quarterly or at other intervals as specified by the plan. "If a payment is not made when due, interest on the payment shall accrue from the due date until the date on which the payment is made." 29 U.S.C. § 1399(c)(3). The rate at which the § 1399(c)(3) interest accrues on delinquent withdrawal liability payments is based on "prevailing market rates for comparable obligations, in accordance with regulations prescribed by the corporation." 29 U.S.C. § 1399(c)(6). The regulations promulgated under § 1399(c)(6) are set out in 29 C.F.R. § 2644.[2]
 
 
 11
 When the plan and the employer dispute any aspect of a multiemployer plan, including the employer's withdrawal liability, either party may bring an action under 29 U.S.C. § 1451.[3] In the context of a § 1451 action, ERISA provides that "any failure of the employer to make any withdrawal liability payment within the time prescribed shall be treated in the same manner as a delinquent contribution." 29 U.S.C. § 1451(b). Thus, 29 U.S.C. § 1132(g), governing the award in civil actions involving delinquent contributions to a benefit plan, also applies to overdue withdrawal liability payments in a § 1451 lawsuit.
 
 
 12
 Upon favorable judgment in a § 1451 action, the plan is awarded the following:
 
 
 13
 (A) the unpaid contributions,
 
 
 14
 (B) interest on the unpaid contributions,
 
 
 15
 (C) an amount equal to the greater of-
 
 
 16
 (i) interest on the unpaid contributions, or
 
 
 17
 (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such a higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
 
 
 18
 (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
 
 
 19
 (E) such other legal or equitable relief as the court deems appropriate.
 
 
 20
 29 U.S.C. § 1132(g)(2). Thus, the plan may be entitled to double the amount of interest on unpaid withdrawal liability payments (i.e., the liability provided for unpaid contributions), once under § 1132(g)(2)(B) and again under § 1132(g)(2)(C)(i). Under § 1132(g)(2), "interest on unpaid contributions [and thus on unpaid withdrawal liability payments] shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26."
 
 III. DISCUSSION
 
 21
 A. Pre-judgment interest under § 1132(g)(2).
 
 
 22
 1. Starting date for interest accrual.
 
 
 23
 The district court held that pre-judgment interest accrued on all five overdue withdrawal liability payments from the due date of the first installment, February 20, 1988.[4] CCC argues that the interest on the five overdue withdrawal liability payments--due 2/20/88, 5/20/88, 8/20/88, 11/20/88, and 2/20/89--accrued from the due date of each respective installment rather than from the due date of the first installment. In other words, the interest owed on the first payment ran from February 20, 1988, the interest owed on the second payment ran from May 20, 1988, and so forth. Several considerations persuade us that CCC's calculation is correct.
 
 
 24
 First, as explained above, the interest calculation is governed by 29 U.S.C. § 1132(g)(2) when an action to collect a withdrawal liability payment is brought under 29 U.S.C. § 1451. Neither § 1132(g)(2) nor the regulation thereunder specifies the starting date for interest accrual. However, 29 U.S.C. § 1399(c)(3) expressly provides that if a withdrawal liability payment is not made on the installment due date, then interest shall accrue from that due date. The regulation thereunder also expressly so states. 29 C.F.R. § 2644.3. In other words, the interest runs from the due date of each respective installment. We believe it is appropriate to borrow the accrual date from § 1399(c)(3) because § 1132(g)(2) and § 1399(c)(3) both provide for interest on delinquent withdrawal liability payments. The only difference between the two sections is that § 1399(c)(3) contemplates payment of the interest without the necessity of filing suit, while § 1132(g)(2) governs the interest calculation when suit is filed to collect the delinquent payment. The Plan argues that there should be a penalty for imposing the necessity of filing suit and that the penalty should be an acceleration of the subsequent installment due dates. We reject the Plan's argument; § 1132(g)(2) has separate provisions to penalize the delinquent payor for imposing the necessity of a suit to collect. See 29 U.S.C. § 1132(g)(2)(C)(i) (double interest); 29 U.S.C. § 1132(g)(2)(D) (attorneys' fees and costs).
 
 
 25
 Second, the district court's interest calculation is, in effect, a retroactive acceleration of interest on CCC's overdue payments. That is, § 1399(c)(3) makes it clear that interest on any delinquent withdrawal liability installment payment accrues on the due date of such installment. By holding that interest on all delinquent payments accrued on the due date of the first delinquent installment, the district court in effect accelerated the due date of each succeeding installment to the due date of the first installment. This acceleration is inconsistent with the holding of this court in the prior appeal that such acceleration was inappropriate. 896 F.2d at 1346 n. 29.
 
 
 26
 Third, the language of 29 U.S.C. § 1451(b) and 29 U.S.C. § 1132(g)(2) strongly points to the construction urged by CCC. Section 1451(b) provides that "any failure of the employer to make any withdrawal liability payment within the prescribed time shall be treated in the same manner as a delinquent contribution." Thus, with respect to each withdrawal liability installment, the right to sue is triggered by the failure to pay the installment "within the prescribed time," i.e., at the due date of each installment.
 
 
 27
 Significantly, § 1451(b) provides that a suit to collect a delinquent withdrawal liability installment "shall be treated in the same manner as a delinquent contribution." When "withdrawal liability payment" is substituted for "contribution" in § 1132(g)(2)'s interest provisions, § 1132(g)(2) provides for "interest on the unpaid contribution withdrawal liability payment." Thus, § 1132(g)(2) provides for interest only on unpaid withdrawal liability payments. A withdrawal liability installment is not unpaid until after its respective due date.[5]
 
 
 28
 For the foregoing reasons, we conclude that the interest on CCC's five delinquent withdrawal liability payments accrued from the due date of each respective installment.
 
 
 29
 2. Withdrawal liability amount on which interest accrued.
 
 
 30
 Closely intertwined with the issue of the starting date of § 1132(g)(2) interest accrual is the issue of the amount of withdrawal liability on which the § 1132(g)(2) interest should be figured. The Plan argues that the amount on which § 1132(g)(2) interest accrued was the total underlying withdrawal liability principal, determined from the date of the Plan's initial demand for withdrawal liability. The Plan analogizes § 1132(g)(2) interest with interest that accrues on a loan, where interest accrues on the entire balance of the loan from the date on which the loan was made. Thus, the Plan concludes that § 1132(g)(2) interest accrued on CCC's entire withdrawal liability from the date the liability arose.[6]
 
 
 31
 The Plan is mistaken in its analogy and argument. It is not the § 1132(g)(2) interest that is analogous to the interest on a loan. Rather, it is the interest that is calculated into the amortized withdrawal liability installment payments that is analogous to loan interest, which is similarly calculated into the amortized loan payments. Therefore, the Plan has already incorporated the interest that accrued from the date of liability into the withdrawal liability installment payments. Each installment payment reflects a portion of that interest.[7] On the other hand, § 1132(g)(2) interest is interest that accrues on delinquent contributions, and, via § 1451(b), on delinquent withdrawal liability installment payments. Thus, § 1132(g)(2) interest only accrued on each respective installment as it became due, not on CCC's entire withdrawal liability.[8]
 
 
 32
 For this reason, as well as the reasons supporting our decision regarding the starting date of interest accrual, we hold that the § 1132(g)(2) interest accrued on each of CCC's five delinquent installments from their respective due dates.
 
 
 33
 B. Interest formula--applicability of 26 U.S.C. § 6622.
 
 
 34
 The Plan argues that the district court erred in failing to compound daily the § 1132(g)(2) interest pursuant to 26 U.S.C. § 6622. Section 1132(g)(2) invokes 26 U.S.C. § 6621 to govern the interest rate in the event the plan is silent on that issue. The Plan argues that the reference in § 1132(g)(2) to § 6621 necessarily incorporates 26 U.S.C. § 6622(a), which states: "In computing the amount of any interest required to be paid under this title or sections 1961(c)(1) or 2411 of title 28, United States Code, by the Secretary or by the taxpayer, or any other amount determined by reference to such amount of interest, such interest and such amount shall be compounded daily."[9]
 
 
 35
 We hold that the district court correctly applied a simple interest rate. Turning first to the language of the statutes, we note that § 1132(g)(2) states that the rate of interest is determined by § 6621, not the method, formula, or procedure for the interest calculation. Thus, the compounding method or formula of § 6622 is inapplicable to § 1132(g)(2) interest.
 
 
 36
 In addition, we conclude that Congress did not intend § 6622 to amend § 1132(g)(2) because at the time the latter provision was adopted, § 6622 was not in existence. If Congress had intended an amendment of § 1132, it is logical to assume that § 6622 would have specifically referenced 29 U.S.C. § 1132(g)(2) as it did other statutory provisions, i.e., Title 26 and 28 U.S.C. §§ 1961(c)(1) and 2411.[10] Furthermore, adoption by one statute of the specific provisions of another statute references the second statute as it existed at the time of the adoption, absent an expression to the contrary. Hassett v. Welch, 303 U.S. 303, 314, 58 S.Ct. 559, 564, 82 L.Ed. 858 (1938). Applying this longstanding canon of statutory construction, 29 U.S.C. § 1132(g)(2) references 26 U.S.C. § 6621 as it existed at the time of § 1132(g)(2)'s adoption. Because § 6622 amended Title 26 and, specifically, § 6621, subsequent to § 1132(g)(2)'s enactment, that amendment does not apply to § 1132(g)(2).
 
 
 37
 For the foregoing reasons, we hold that the district court properly refused to apply the compounding provision of § 6622 to its calculation of the § 1132(g)(2) interest owed by CCC.
 
 
 38
 C. Doubling of Post-judgment interest.
 
 
 39
 Section § 1132(g)(2) awards the employee benefit plan double the interest on unpaid amounts, once under subsection (B) and again under subsection (C)(i). However, the district court concluded that post-judgment interest was not subject to the doubling penalty of § 1132(g)(2). Both parties agree that 28 U.S.C. § 1961[11] controls the calculation of post-judgment interest. However, the Plan contends that the lack of conflict between 28 U.S.C. § 1961 and 29 U.S.C. § 1132(g)(2), coupled with the fact that § 1132(g)(2) does not facially limit the accrual of interest to the date of judgment, supports its position that post-judgment interest, while calculated at the § 1961 interest rate, should be doubled under § 1132(g)(2).
 
 
 40
 In I.A.M. Nat'l Pension Fund, Plan A v. Slyman Indus., Inc., 901 F.2d 127 (D.C.Cir.1990), the D.C. Circuit addressed similar arguments and held that the doubling provisions of § 1132(g)(2) do not extend into the post-judgment period. The district court in that case found that if § 1132(g)(2)'s doubling provisions applied to post-judgment interest, they would modify 28 U.S.C. § 1961 in contravention of ERISA's intended effect. See Slyman, 901 F.2d at 130. See also 29 U.S.C. § 1144(d) (stating that ERISA is not to be construed "to alter, amend, modify, invalidate, impair, or supersede any law of the United States"). Furthermore, including post-judgment interest in § 1132(g)(2) calculations would disrupt the intended certainty and ease of administration of § 1132(g)(2)(C)(ii), the liquidated damages clause, by confusing the issue of whether it should apply instead of the double interest provision of § 1132(g)(2)(C)(i). Slyman, 901 F.2d at 130.
 
 
 41
 We agree with and adopt the above reasoning in holding that the post-judgment interest owed by CCC is not subject to § 1132(g)(2)'s doubling provisions.
 
 
 42
 D. Offset by § 1399(c)(3) interest.
 
 
 43
 The district court ordered the parties to set off from the amount of § 1132(g)(2) interest owed by CCC the $39,326.64 that CCC had already paid the Plan pursuant to 29 U.S.C. § 1399(c)(3). Nothing in the text of either provision, § 1132(g)(2) or § 1399(c)(3), indicates whether § 1132(g)(2) interest should be awarded in addition to or instead of § 1399(c)(3) interest.[12] The district court held, however, that rules of statutory construction require that the statutes should be interpreted to avoid redundancy. Thus, the court concluded that § 1132(g)(2) controls payment pursuant to a court judgment against the employer, and § 1399(c)(3) applies when legal action is not required, i.e., when the employer voluntarily pays the overdue payment after the scheduled due date.
 
 
 44
 The district court cited two cases: Speckmann v. Paddock Chrysler Plymouth, Inc., 565 F.Supp. 469 (E.D.Mo.1983), and Central States, Southeast & Southwest Areas Pension & Health & Welfare Funds v. C.J. Rogers Transp. Co., 544 F.Supp. 308 (E.D.Mich.1982). In Speckmann, the court held that the § 1132(g)(2) interest rate applied to the unpaid contributions at issue, not the interest rate set forth in § 1399(c)(6). While it is not clear from the opinion that the pension plan in that case was seeking interest under both provisions, the Speckmann court's holding suggests that only one rate, and therefore only one interest provision, applies.
 
 
 45
 In Central States, the court found that the employer had voluntarily paid interest on unpaid contributions through the date of judgment. The court denied the plan an award of interest under § 1132(g)(2), stating that "[c]learly Congress did not intend to allow interest to be reassessed on the unpaid contributions owing on the date of entry of judgment when the plan has assessed and collected interest up to that time." Central States, 544 F.Supp. at 313. While these facts are distinguishable from those in the instant case where CCC did not pay any interest until judgment was entered against it, the principle of Central States, that an employee benefit plan should not be entitled to § 1132(g)(2) interest in addition to the interest it has already received on delinquent payments, still applies.
 
 
 46
 The Plan argues that both § 1399(c)(3) and § 1132(g)(2) apply to the interest owed by CCC because they are separate sections serving different purposes. The Plan correctly suggests that § 1399(c)(3) is merely compensatory, whereas § 1132(g)(2) is also punitive. However, we reject its argument that both statutes therefore apply. While both statutory sections contemplate interest on the same delinquent payment, we agree with the district court that the most reasonable construction of ERISA is that § 1132(g)(2) applies exclusively when suit has been filed regarding an employer's withdrawal liability. Section 1132(g)(2) not only provides compensatory interest in subsection (B), but it also provides a specific penalty in the form of double interest and attorneys' fees and costs. See 29 U.S.C. § 1132(g)(2)(C)(i) and (D). We see no indication of a Congressional intent to impose any other penalty, including that argued by the Plan: assessment of § 1399(c)(3) interest in addition to § 1132(g)(2) interest. Thus, we conclude that only § 1132(g)(2) interest accrued on CCC's five delinquent withdrawal liability payments, and we affirm the district court's holding directing the parties to set off the § 1399(c)(3) interest previously paid by CCC against CCC's § 1132(g)(2) interest liability.
 
 
 47
 In light of the foregoing, we affirm the district court's judgment in all respects with the following exception. We reverse the district court's holding that the § 1132(g)(2) withdrawal liability interest owed by CCC to the Plan accrued on the sum of the five delinquent installments from the due date of the first installment. Instead, we hold that § 1132(g)(2) interest accrued separately on each installment from the respective due date of each installment.
 
 
 48
 AFFIRMED in part and REVERSED in part.
 
 
 
 *
 See, Rule 34-2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit
 
 
 **
 Honorable Wesley E. Brown, Senior U.S. District Judge for the District of Kansas, sitting by designation
 
 
 [1]
 The Plan amended this schedule on May 18, 1988, for a total liability of $1,318,233, with fourteen quarterly payments of $109,331.36 and a final payment of $60,302.63. However, CCC was ultimately found liable in accordance with the December 21, 1987, schedule. Carriers Container Council, Inc. v. Mobile S.S. Ass'n--Int'l Longshoreman's Ass'n, 896 F.2d 1330, 1347 (11th Cir.), cert. denied, --- U.S. ----, 111 S.Ct. 308, 112 L.Ed.2d 261 (1990)
 
 
 [2]
 In particular, § 2644.3(a)(1) states that "[t]he plan sponsor of a multiemployer plan--[s]hall assess interest on overdue withdrawal liability payments from the due date, as defined in paragraph (d) of this section, until the date paid." Paragraph (d) states: "Except as otherwise provided in rules adopted by the plan, the due date from which interest accrues shall be, for an overdue withdrawal liability payment ..., the date of the missed payment that gave rise to the delinquency...."
 
 
 [3]
 In addition, the employer and the plan are required to attempt to resolve a dispute regarding withdrawal liability through arbitration. 29 U.S.C. § 1401(a)(1)
 
 
 [4]
 The district court relied upon the Fifth Circuit's holding that interest on the unpaid contributions was due "from the date of the deficiency until the date the deficiency is paid." South Cent. United Food & Commercial Workers Unions v. C & G Markets, Inc., 836 F.2d 221, 225 (5th Cir.), cert. denied, 486 U.S. 1056, 108 S.Ct. 2823, 100 L.Ed.2d 924 (1988). However, that holding is inconclusive because it is unclear whether the Fifth Circuit intended "date of the deficiency" to mean the due date of the first contribution, the respective due date of each contribution, or the judgment date on which the employer was held liable for a delinquency
 
 
 [5]
 Of course, this obvious fact assumes that the due date of subsequent installments is not accelerated under 29 U.S.C. § 1399(c)(5) by the failure to timely pay the earlier installment. See 29 U.S.C. § 1399(c)(5) (allowing for acceleration in the event of a default). As noted above, this court on the prior appeal held that acceleration is not appropriate in this case
 
 
 [6]
 The Plan also relies on the outcome in Trustees of the Amalgamated Ins. Fund v. Sheldon Hall Clothing, Inc., 683 F.Supp. 986 (E.D.Pa.1988), aff'd, 862 F.2d 1020 (3rd Cir.1988), cert. denied, 490 U.S. 1082, 109 S.Ct. 2104, 104 L.Ed.2d 665 (1989), where the entire amount of withdrawal liability principal was awarded to the plan in an arbitration proceeding, and the court assessed § 1132(g)(2) interest on that amount
 However, the facts in Sheldon Hall are distinguishable. For § 1132(g)(2) interest to accrue on the entire underlying withdrawal liability principal, it is apparent that the Sheldon Hall court accelerated the employer's withdrawal liability under 29 U.S.C. § 1399(c)(5) so that the entire amount was delinquent as of the judgment date. However, this court has held that acceleration is inapplicable to the instant case. See 896 F.2d at 1346 n. 29. Furthermore, contrary to the Plan's assertion, the Sheldon Hall court did not indicate that it relied upon an interpretation of § 1132(g)(2) in determining that interest accrued on the entire withdrawal liability principal. Thus, the outcome in Sheldon Hall does not support the Plan's rationale.
 
 
 [7]
 The Plan admits that the withdrawal liability installment plan is structured in this manner, stating that "the scheduled quarterly payments ... included both an amount to reduce principal and an amount for interest." Appellee's reply brief at 5
 
 
 [8]
 Furthermore, CCC contends that unlike the Plan's calculation, its proposal preserves the statutory scheme underlying ERISA. We agree. ERISA establishes a withdrawal liability payment schedule which includes both principal and interest components for each installment, with the interest component determined under 29 U.S.C. § 1399(c)(1)(A)(ii). The Plan's argument, that § 1132(g)(2) interest accrued on CCC's entire withdrawal liability, ignores the statutory scheme of an amortized payment plan and establishes a new interest rate on the underlying withdrawal liability principal, i.e., that set forth in 26 U.S.C. § 6621 pursuant to § 1132(g)(2). However, CCC's argument, that § 1132(g)(2) interest accrued on each delinquent installment payment as it became due, assumes that § 1132(g)(2) interest is distinct from and should be paid in addition to the § 1399(c)(1)(A)(ii) interest inherent in the installment schedule. CCC's calculation thereby retains the § 1399(c)(1)(A)(ii) interest rate that is inherent in the amortization scheme of ERISA
 
 
 [9]
 The Plan relied upon the holding of the Northern District of Illinois in Plumbers Pension Fund, Local 130, U.A. v. Ted's Plumbing, Inc., 1990 WL 115763 (N.D.Ill.1990), to support its proposal for interest compounding. In that case, the court held that because § 6621 does not explain how or if the § 1132 interest will be compounded, § 6622 must be referenced. 1990 WL 115763, * 4
 The Plumbers Pension Fund court cited two cases, South Cent. United Food & Commercial Workers Unions et al. v. C & G Markets, Inc., 836 F.2d 221 (5th Cir.), cert. denied, 486 U.S. 1056, 108 S.Ct. 2823, 100 L.Ed.2d 924 (1988), and Benvenuto v. Schneider, 678 F.Supp. 51 (E.D.N.Y.1988). However, neither case stands for the proposition that the § 1132(g)(2) interest, as calculated under § 6621, must be compounded under § 6622. Thus, the district court properly rejected the Plumbers Pension Fund holding as unsupported by case law.
 C & G Markets involved a plan which specified an interest rate, so there was no need to invoke § 6621 under § 1132(g)(2). C & G Markets, 836 F.2d at 226 ("Because South Central Trust does specify an interest rate in the Delinquency Policy, there is no reason to look to the IRC"). See 29 U.S.C. § 1132(g)(2) (the § 6621 rate only applies if the plan does not provide an applicable interest rate). In that case, the compounding of interest calculated under § 6621 was not even at issue.
 In Benvenuto, the court did not even address § 1132(g)(2) interest. That case involved a 29 U.S.C. § 1109(a) breach of fiduciary duty, not a 29 U.S.C. § 1145 action for the recovery of delinquent contributions. Contrary to the Plan's suggestion, § 1132(g)(2) did not apply to that case. Instead, the court awarded pre-judgment interest pursuant to its broad discretion to determine appropriate relief under § 1109(a). See Benvenuto, 678 F.Supp. at 55.
 
 
 [10]
 Neither can we construe § 6622 to amend § 1132(g)(2) by implication because an amendment by implication is recognized only where Congressional intent is clear. See St. Martin Evangelical Lutheran Church v. South Dakota, 451 U.S. 772, 787-88, 101 S.Ct. 2142, 2151, 68 L.Ed.2d 612 (1981); Patel v. Quality Inn S., 846 F.2d 700, 704 (11th Cir.1988), cert. denied, 489 U.S. 1011, 109 S.Ct. 1120, 103 L.Ed.2d 182 (1989)
 
 
 [11]
 That provision states:
 Interest shall be allowed on any money judgment in a civil case recovered in a district court. Execution therefor may be levied by the marshal, in any case where, by the law of the State in which such court is held, execution may be levied for interest on judgments recovered in the courts of the State. Such interest shall be calculated from the date of the entry of the judgment, at the rate allowed by State law.
 
 
 [12]
 In addition, the cases addressing the payment of withdrawal liability are unclear on this issue. See Central States, Southeast & Southwest Areas Pension Fund v. Skyland Leasing Co., 691 F.Supp. 6, 16 (W.D.Mich.1987), aff'd, 892 F.2d 1043 (6th Cir.1990); United Food & Commercial Workers Union v. Progressive Supermarkets, 644 F.Supp. 633, 642 (D.N.J.1986)