Anthony S. RUSSO, et al., Plaintiffs,

and

Pension Benefit Guaranty Corporation, Successor Trustee of the Celebrity, Inc. Retirement Trust, Plaintiff–Intervenor,

v.

Alan S. UNGER and Theresa Unger, Defendants.

Robert B. REICH, Secretary of Labor, United States Department of Labor, Plaintiff,

v.

Alan S. UNGER and Theresa Unger, Defendants.

Nos. 86 Civ. 9741 (CSH), 89 Civ. 6437 (CSH).

United States District Court, S.D. New York.

Jan. 28, 1994.

---

James P. Dollard, Jr., Blum, Haimoff, Gersen, Lipson & Niedergang, New York City, Carol Connor Flowe, Pension Benefit Guar. Corp., Office of Gen. Counsel, Washington, DC, for plaintiff Pension Benefit Guar. Corp.

James P. Dollard, Jr., Blum, Haimoff, Gersen, Lipson & Niedergang, New York City, for plaintiffs Anthony J. Russo, Tom P. Brown, Helen Goldstein, Michael P. Jennings, Adrienne Pregno, George Rosenberg, Alvin Schnee, Margaret Basalone, Patricia Calderone, Elizabeth Erdman, Ben Guillen, Min–Jui Huang, Maurice Lapides, Kurt S. Leeb, Rae Liebowitz, Jesus Navas, Carmen M. Rodriquez, Josie Sanchez, Joseph Savino, Jean Sawey, Elizabeth Schuler, Paula Solorzano, Matta Touma, Anna Van Hove, Richard Stanco, Emma Duran, Margaret Jacuzzi, Howard Kammen, Paul Terrizzi, Marian Dowling and Varena Vetter.

Joseph H. Einstein, Goodkind Labaton Rudoff & Sucharow, New York City, for defendant Alan S. Unger.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

This case is currently before the Court on the parties' various Objections to the Report and Recommendation of Magistrate Judge Barbara A. Lee dated March 26, 1993. I have received and considered both the Report and Recommendation and the objections to it. For the reasons that follow, I accept it in part and modify it in part.

### BACKGROUND

The facts of this case have been set forth in this Court's prior Memorandum Opinion and Order on summary judgment dated November 20, 1991, familiarity with which is assumed. In that opinion, this Court granted plaintiffs' motion for summary judgment, holding that Alan and Theresa Unger had breached their fiduciary duties imposed by the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.* ("ERISA"). The Court held the defendants jointly and severally liable in the amount of $447,160.48, plus interest and granted reasonable attorney's fees and costs against Alan Unger but denied an award of attorney's fees against Theresa Unger. Upon motion for reconsideration, the Court held defendants jointly and severally liable for an additional $52,-384.18, plus interest, bringing the total amount of liability to $499,544.66, plus interest. Thereafter, this Court referred the case to Magistrate Judge Lee for a report and recommendation on the amount of attorney's fees and prejudgment interest to be awarded.

The issues this Court must decide upon *de novo* review of Magistrate Judge Lee's Report and Recommendation involve the rate to be applied in computing the prejudgment interest, whether the interest should be simple or compound, and the amount of attorneys' fees to be awarded.

### DISCUSSION

*Prejudgment Interest*

■ Under ERISA § 409(a), as amended, 29 U.S.C. § 1109, any person who is found to

have breached their ERISA-imposed fiduciary duties to an employee benefit plan "shall be personally liable to make good to such plan any losses to the plan resulting from each such breach. . . ." Although an award of prejudgment interest to a prevailing party is not specifically provided for in the statute, a court has "wide discretion" to award prejudgment interest in cases against fiduciaries under § 1109. *Diduck v. Kaszycki & Sons Contractors, Inc.*, 974 F.2d 270, 286 (2d Cir. 1992). "Prejudgment interest is not intended to penalize the trustee but serves as compensation for the use of money withheld. Hence, such an award must be made with an eye toward putting the plan in the position it would have occupied but for the breach." *Id.* (citations omitted).

While the court in its discretion may award prejudgment interest in cases against fiduciaries under § 1109, no statutory provision sets forth the interest rate to be applied when granting such an award. In contrast, in cases brought against employers for delinquent contributions under 29 U.S.C. § 1145 courts are required to calculate prejudgment interest according to section 6621 of Title 26, if the plan itself does not provide the applicable rate. Section 6621 contains the provision of the Internal Revenue Code which determines the rate of interest applied to overpayments and underpayments of income taxes to the federal government. Prior to the effective date of the 1986 amendment to that section, the rate of interest under § 6621 was equivalent to the adjusted prime rate. Pursuant to the 1986 amendment, effective January 1, 1987, the interest rate under § 6621 is the Federal short-term rate plus two percentage points (for an overpayment of taxes) or three percentage points (for an underpayment of taxes).

As Magistrate Judge Lee noted, § 6621 of Title 26 is not mandatorily applicable to an award of prejudgment interest in cases against fiduciaries under § 1109 of Title 29. Of the few reported cases in which a court has specified the rate of interest to applied in computing an award of prejudgment interest under § 1109, several courts have applied in their discretion the interest rate set forth in § 6621. *See e.g. McLaughlin v. Cohen*, 686 F.Supp. 454, 458 (S.D.N.Y.1988); *Whitfield v. Tomasso*, 682 F.Supp. 1287, 1307 (E.D.N.Y. 1988); *Benvenuto v. Schneider*, 678 F.Supp. 51, 55 (E.D.N.Y.1988); *Marshall v. Snyder*, 1 EBC 1878, 1888–89 (E.D.N.Y.1979); *Martin v. Harline*, 15 EBC 1138, 1153 (D.Utah 1992).

The Second Circuit has never specifically determined the rate of interest courts should apply to awards of prejudgment interest in cases against fiduciaries under ERISA. Recently, the Second Circuit has provided some guidance to courts confronting this issue. There is no strict formula for determining the rate of interest to be applied. Instead,

> "[a]ssessing the appropriate amount of interest requires a comparison of what the plan earned during the time in question and what it would have earned had the money lost due to the breach been available. One must look to the return on investments held by the plan to determine the appropriate interest rate to be applied under § 409."

*Diduck*, 974 F.2d at 286.

In *Diduck*, the Second Circuit reversed the district court's award of prejudgment interest computed pursuant to 26 U.S.C. § 6621 in a case against a fiduciary under 29 U.S.C. § 1109. The court did not expressly preclude the application of the § 6621 interest rate in all cases. Rather, it reasoned that the adjusted prime rate (the applicable rate under § 6621 before the 1986 amendment became effective) was as high as 20%, much higher than the historical rate of return of 5% to 8% on the employee benefit funds at issue. Hence, the court noted, "[p]rime is not an appropriate measure where a plan typically does not earn that sort of a return on its investments." *Id.* I agree with the conclusion of Magistrate Judge Lee that "a fair reading of the *Diduck* case is that in cases against trustees under Section 409 of ERISA, the district court has discretion to apply the Section 6621 rate, provided it finds, based on the evidence before it, that that rate is an appropriate one consistent with Section 409's standard of making the plan whole, and the court must make specific. determination as to that appropriateness."

Transcript of March 3, 1993 Oral Argument before Magistrate Judge Lee ("Tr.") at 69.

In this case, the rate of return on the retirement plan for the year ending June 30, 1985 was 12.19%. *See* Tr. at 6. The rate of return for the profit-sharing plan for the year preceding the onset of the breaches was 24%. *See id.* Nonetheless, the defendants urged Magistrate Judge Lee to apply the plans' asserted actual average rate of return during the years 1986 through 1992 of 8.5%. *See* Tr. at 73; Defendants' Memorandum of Law dated January 28, 1993 at 5.

Magistrate Judge Lee properly rejected the 8.5% figure as not fairly representing the rate the funds would have earned had the misappropriations not been made. Moreover, Magistrate Judge Lee determined that given the magnitude of the misappropriations in this case, any projected rate of return would be entirely speculative. Tr. at 74. No party disputes this conclusion.

Given the conjectural nature of any projected rate of return calculation, Magistrate Judge Lee viewed the rate calculation under § 6621 as providing an "objective measure of the value of money." Tr. at 74. Magistrate Judge Lee recommended calculating the interest rate pursuant to § 6621, without the three percentage point surcharge for the periods after the 1986 amendment went into effect. The applicable rates of interest under § 6621 for the periods subsequent to the breaches in this case range from 7% to 12%. This range of rates includes the additional three percentage points applicable pursuant to the 1986 amendment. *See* IRS Advance Ruling 93–24 attached as Exhibit C to Affidavit of Alan Huff.

While I agree with Magistrate Judge Lee's recommendation of the interest rate calculation pursuant to § 6621, I disagree with her recommended subtraction of the three percentage point surcharge. That method of calculation would require applying the short-term rate, a rate of only 4% to 8% during the period after the amendment became effective. This rate seems excessively low, even lower than the rate of 8.5% suggested by defendants and the asserted average rates of return on the funds for the periods immediately preceding the initiation of the breaches.

■ I can find no indication that Congress enacted the three percentage point surcharge as a penalty, as Magistrate Judge Lee suggested. Indeed, the legislative history of the 1986 amendment to § 6621 indicates that Congress was concerned with making the interest rate under § 6621 reflective of "other interest rates in the economy," not with penalizing taxpayers. *See* H.R.Rep. No. 99–426, 99th Congr., 1st Sess. 3 (1986), attached as Exhibit Three to Secretary of Labor's Objections. The short-term treasury rate is the rate the United States government pays on its own loans, a conservative rate of interest not necessarily reflective of market interest rates. *See In re Camino Real Landscape Maint. Contractors,* 818 F.2d 1503, 1506 (9th Cir.1987) (in bankruptcy appeal not involving ERISA the court noted, "[t]he treasury rate is the government's cost of borrowing, which is relatively quite low because to the lender the government's obligation is a short-term, low risk investment"). Accordingly, the interest rate for overpayments set forth in § 6621, including the additional three percentage points, is a more appropriate measure of the value of money than the short-term treasury rate alone, and will more readily achieve ERISA's objective of "restor[ing] the trust beneficiaries to the position they would have occupied but for the breach of trust." *Donovan v. Bierwirth,* 754 F.2d 1049, 1056 (2d Cir.1985).

*Compound Interest*

■ The decision of whether to award simple or compound interest in cases against fiduciaries under ERISA also rests within the discretion of the trial court. The scarce reported opinions addressing the issue of whether compound or simple interest should be applied to awards of prejudgment interest in cases under § 1109 are generally unhelpful. In *Brink v. DaLesio,* 667 F.2d 420, 429 (4th Cir.1981), the court reversed the district court's refusal to grant prejudgment interest in a § 1109 case and noted without further elaboration that "in some instances a trustee may be required to pay compound interest . . . although we do not deem this such a case." At least two courts have applied com-

**128**

pound interest in a case pursuant to § 1109 without discussion. *See Whitfield v. Tomasso, supra,* 682 F.Supp. at 1306; *Marshall v. Snyder, supra,* 1 EBC at 1888–89 (E.D.N.Y. 1979). Other courts have applied simple interest without useful explanation. *See e.g. McLaughlin v. Cohen, supra,* 686 F.Supp. at 458; *Donovan v. Bryans,* 566 F.Supp. 1258, 1266 (E.D.Pa.1983). This Court has found only one reported case which sets forth a useful analysis guiding this Court's exercise of discretion. In *Martin v. Harline, supra,* 15 EBC at 1154 (D.Utah 1992), the court granted prejudgment interest in a case under § 1109 at a rate calculated pursuant to 26 U.S.C. § 6621 and compounded daily. The court reasoned:

"Compound interest should be allowed against a breaching fiduciary where it is necessary to compensate the beneficiaries for losses caused by the breach, where money is unlawfully invested, or where the trustee has a duty to reinvest the interest accumulated by the trust. Bogert, [*Trusts & Trustees,*] § 863 at pp. 55–57 [ (2d Ed. 1982) ]; A.W. Scott, *Law of Trusts* § 207.2 (1967); Restatement (Second) of Trusts, Comments § 207."

Two of the authorities cited in *Martin* shed some light on the issue. The Comments to § 207(2) of the Restatement (Second) of Trusts (1959) explain:

"d. *Simple and compound interest.* A trustee who commits a breach of trust is ordinarily chargeable with simple and not compound interest.

If, however, he has actually received compound interest, he is chargeable with compound interest.

If the trustee uses trust funds in his own business and it does not appear how much he has earned thereon, he is ordinarily chargeable with compound interest on the ground that he probably received a return from the trust fund so used at least equal to compound interest.

If the trustee is under a duty to reinvest interest received by him and accumulate it for the beneficiary, and fails to do so, he is chargeable with compound interest, since if he had not committed a breach of trust he would have received compound interest."

One commentator has noted that compound interest may be awarded against breaching trustees under various circumstances:

"Compound interest is, however, more often allowed in cases involving fraud, willful misconduct, or other gross delinquency, than in instances of honest mistake or bad judgment.

Perhaps the most common instance of collection of compound interest from the defaulting trustee is found where he had used the trust fund in his own business and the actual profits earned by the trust fund are not claimed or are impossible of computation...."

Bogert, *Trusts and Trustees,* § 863 at 56 (2d ed. rev. 1982).

Applying the factors identified in *Harline,* Magistrate Judge Lee concluded that this case did not warrant a discretionary award of compound interest. Her conclusion rested upon a number of factors including the fact that all of the funds would not have been available for reinvestment and her concern that Theresa Unger would be liable for compound interest although the nature of her breach was less egregious than Alan's.

■ While there is certainly support for Magistrate Judge Lee's position, I reach a different conclusion. I believe that this is an appropriate case for the award of compound interest against both defendants. A common element embraced by two authoritative texts in determining whether compound interest should be awarded is whether the breach involved self-dealing. In addition, both *Martin* and the Restatement identify the trustee's duty to reinvest as a factor giving rise to an award of compound interest. The presence of both self-dealing and a duty to reinvest in this case make an award of compound interest appropriate.

■ It is clear that Alan Unger engaged in self-dealing by transferring the misappropriated assets to Celebrity, Inc., a company solely owned by himself and Theresa Unger. The fact that Theresa Unger was not found to have acted willfully in her breach does not diminish the necessity for award of com-

pound interest. This is not a case of an "honest mistake" or "bad judgment" on the part of Theresa Unger. Rather, it is more akin to a "gross delinquency," given that Theresa Unger entirely failed to comply with her duty to protect the beneficiaries of the plans by turning a blind eye to the self-enriching actions taken by Alan Unger.

Additionally, in accordance with their duty to maximize trust assets, the defendants do not dispute that as trustees they were under a duty to reinvest interest earned on the funds. Although Magistrate Judge Lee correctly noted that periodic distributions were required to be made to beneficiaries of the funds, there is no reason to believe that the trustees were not obligated to reinvest that portion of the interest that was not distributed.

The conclusion that compound interest is proper under the circumstances of this case comports with ERISA's aim to fully compensate the plans for the loss of the money. In a recent case involving the award of prejudgment interest on back pay under Title VII, the Second Circuit concluded, "Given that the purpose of back pay [under Title VII] is to make the plaintiff whole, it can only be achieved if the interest is compounded." *Saulpaugh v. Monroe Community Hosp.*, 4 F.3d 134, 145 (2d Cir.1993).

Similarly, in this case the funds will be placed in the position they would have occupied if the defendants had performed their duties only if compound interest is awarded. Any interest earned by the funds should have been reinvested by the trustees in compliance with common commercial practice and in order to maximize the funds' assets. An award of only simple interest would not adequately reflect this reinvestment requirement and would not fully compensate the beneficiaries for the value of the misappropriated funds.

*Attorneys' Fees*

█ In the Memorandum Opinion and Order dated November 20, 1991, this Court granted an award of attorneys' fees against Alan Unger for the cost of prosecuting the action against him, excluding efforts to recover $52,384.18 in damages. After oral argument, Magistrate Judge Lee recommended a "nominal" award of $5,000 to the Pension Benefit Guaranty Corporation ("PBGC") and an award of $40,000 to the individual plaintiffs, "in addition to that previously paid to their counsel." Report and Recommendation at 2. The individual plaintiffs have been represented in this action by the law firm of Blum, Gersen and Stream ("Blum, Gersen").

Several objections have been made to the recommended awards. Defendant Alan Unger contends that the awards are excessive in view of the allegedly minimal time spent by both PBGC and Blum, Gersen in prosecuting the action against him. The individual plaintiffs, taking the opposite view, urge the Court to award them a larger amount of fees in light of the assertedly considerable efforts by Blum, Gersen in prosecuting the action against Alan Unger. Additionally, because Magistrate Judge Lee did not quantify the amount "previously paid to their counsel," the individual plaintiffs request the Court to find that such amount is equal to $25,312.00.

Magistrate Judge Lee's award of attorneys' fees is affirmed substantially for the reasons stated at pp. 78–82 of the Transcript. While I do have some greater awareness of the efforts of counsel in this case, nothing in my awareness causes me to disagree with Magistrate Judge Lee's conclusion. As to the recommended award to the individual plaintiffs of amounts "previously paid to their counsel," because no party has disputed the precise dollar figure, I find the amount to be as Blum, Gersen proposes: $25,312.00.

### CONCLUSION

Defendants must pay prejudgment interest at a rate to be computed according to 26 U.S.C. § 6621, using the "overpayment rate" for relevant periods after the effective date of the 1986 amendment to that section. This interest is to be compounded daily. Attorneys' fees are to be awarded according to the Report and Recommendation of Magistrate Judge Lee dated March 26, 1993.

Plaintiffs are directed to settle judgment upon seven days' notice within thirty days from the date of this Order.

It is SO ORDERED.