**LABORERS' PENSION TRUST FUND– DETROIT AND VICINITY, Laborers' Vacation and Holiday Trust Fund–Detroit and Vicinity and Laborers and Poured Concrete Workers Insurance Fund, trust funds established under, and administered pursuant to, federal law, Plaintiffs,**

v.

**FAMILY CEMENT COMPANY, a corporation incorporated under the laws of the State of Michigan, Kathryn Ann Costa and Peter Costa, jointly and severally, Defendants.**

Civ. No. 85–CV–73328–DT.

United States District Court, E.D. Michigan, S.D.

March 18, 1987.

Sheldon M. Meizlish and Mark Granzotto, Detroit, Mich., for plaintiffs.

Sheridan V. Holzman and Charles J. Holzman, Southfield, Mich., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

PHILIP PRATT, Chief Judge.

The Laborers' Pension Trust Fund (Fund) brought this action against the Family Cement Company, a corporation, and its two officers, Kathryn and Pietro Costa. The suit seeks to collect unpaid fringe benefits owed under a collective bargaining agreement.

In 1976, the Costas were operating a cement business under the assumed name of Family Cement Company. At that time Family Cement Company became a member of the Associated Cement Contractors of Michigan (ACCM). The ACCM provides various services to its members. One such service was negotiating and entering into a collective bargaining agreement with appropriate locals of the Laborers' International Union of North America, AFL–CIO (Laborers' Union). As a member of the ACCM, Family Cement Company was obligated to the terms of the collective bargaining agreements entered into between Laborers' Union and ACCM. Pursuant to the agreement in force during the time of Family Cement Company's membership in ACCM, Family Cement Company was obligated to make fringe benefit contributions to the Fund on behalf of its union employees.

The Costas operated their business under the assumed name, Family Cement Company, until May, 1984. In May, 1984, Family Cement Company was incorporated under the laws of the State of Michigan. This act of incorporation did not change the functioning of the organization in any way. The business in which the company was involved remained the same. The Costas retained complete control of the corporation. The assets of the corporation remained the same. The same checking account was continued without change. Family Cement Company did not notify ACCM of any change of its identity with respect to ACCM.

Beginning in May, 1984, however, Family Cement Company stopped paying fringe benefits into the Fund. It did not make any such contribution from that time until it discontinued its membership in ACCM. It is undisputed that Family Cement Company owes the Fund a total of $14,135.19, including liquidated damages. It is also undisputed that Family Cement Company, the corporation, is so indebted. At trial, the court granted the plaintiffs' motion for a judgment against the corporation.

The Fund also seeks indemnification from the Costas themselves under the "alter ego" theory. The "alter ego" theory was discussed at length recently in *N.L.R. B. v. Allcoast Transfer Inc.*, 780 F.2d 576 (6th Cir.1986).

The alter ego doctrine was developed to prevent employers from evading obligations under the Act merely by changing or altering their corporate form. The doctrine "will be applied, when appropriate, to treat two nominally sepa-

rate business entities if they were a single continuous employer". *Alkire v. NLRB*, 716 F.2d 1014, 1018 (4th Cir. 1983). To determine whether application of the doctrine is appropriate, the circumstances surrounding a change in corporate form must be examined to determine whether the change resulted in a "bona fide discontinuance and a true change of ownership" or was merely a "disguised continuance of the older employer." *Id.* at 579. The Sixth Circuit recognizes that factors relevant to a finding of alter ego status include "whether the two enterprises have substantially identical management, business purpose, operation, equipment, customers, supervision and ownership." *Id.* In addition, the *Allcoast* court held that unlawful intent to evade an employer's obligation is a factor to be considered with the others. *Id.* at 581.[1] Deciding whether a successor organization is actually the predecessor organization requires an examination of all the circumstances and a weighing of all the relevant factors. *Id.*

■ The court concludes that the Family Cement Company, the corporation, is the alter ego for Family Cement Company, the assumed name, and the Costas. Although there is no showing of unlawful intent, all the other factors point towards an identity between the two business organizations. The work of both was identical, the successor assumed the obligations of the predecessor, the equipment was the same, the officers were the same, and the control was the same. The court finds that this reorganization was not a "true change" but rather "a disguised continuance of the old employer."

Therefore, the Costas are jointly and severally liable along with Family Cement Company, the corporation, for the unpaid benefits owing the Fund.

■ The Fund also seeks prejudgment interest on the unpaid contributions and liquidated damages as part of its damages.

Interest on judgments is addressed in 28 U.S.C. § 1961. However, Section 1961 does not mention prejudgment interest. "In diversity cases, federal courts follow state law on the question of prejudgment interest." *American Anodco, Inc. v. Reynolds Metals Co.*, 743 F.2d 417, 429 (6th Cir.1984). In federal question cases, federal courts generally have discretion to award prejudgment interest. *Stroh Container Corp. v. Delphi Industries, Inc.*, 783 F.2d 743 (8th Cir.1986), (Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*); *E.E.O.C. v. Wooster Brush Co. Employees Relief Ass'n*, 727 F.2d 566 (6th Cir.1984) (employment discrimination under 42 U.S.C. § 2000e, *et seq.*), *Short v. Central States, Southeast & Southwest Areas Pension Fund*, 729 F.2d 567 (8th Cir.1984) (Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.*); *Bricklayers' Pension Trust Fund v. Tairol*, 671 F.2d 988 (6th Cir.1982) (ERISA and Labor Management Relations Act, 29 U.S.C. § 141 *et seq.*) At least one court has said that "prejudgment interest should ordinarily be granted unless exceptional or unusual circumstances exist making the award of interest inequitable." *Stroh Container, supra*, 783 F.2d at 752.

In *Bricklayers' Pension Trust Fund*, for example, the Sixth Circuit held that a plaintiff may recover prejudgment interest in a suit predicated upon ERISA and the Labor Management Relations Act. In this case, a construction contractor failed to meet his obligations with regard to certain trust funds. Because this failure was a breach of "established contractual rights," the court held that prejudgment interest was an available remedy. In a case involving withholding of ERISA benefits, the Eighth Circuit approved of prejudgment interest in no uncertain terms: "To allow the Fund to retain the interest it earned on funds wrongfully withheld [from a beneficiary] would be to approve of unjust enrichment. Further, the relief granted would fall short of making [the beneficiary] whole because he has been denied the use of

---

1. *Allcoast* also held, however, that unlawful intent is not an essential element if other indicia

are compelling.

money which was his." *Short, supra,* 729 F.2d at 576. These cases apparently rely on the equitable powers of federal courts.

*Bricklayers* and *Short* do not discuss the damages which ERISA requires the court to award:

> In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan—
> (A) the unpaid contributions,
> (B) interest on the unpaid contributions,
> (C) an amount equal to the greater of—
>   (i) interest on the unpaid contributions, or
>   (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
> (E) such other legal or equitable relief as the court deems appropriate.
>
> For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26.

29 U.S.C. § 1132(g)(2). This section contemplates a mandatory assessment of interest on the unpaid contributions. In addition, the section contemplates a remedial award in the form of either liquidated damages or a second assessment of interest on the unpaid contributions (the so-called "double-interest penalty"). *Carpenters, etc., Health Benefits Fund v. Ryan Construction Co.,* 767 F.2d 1170, 1172–73 (5th Cir.1986); *Central States, Southeast and Southwest Areas Pension Fund v. Alco Express Co.,* 522 F.Supp. 919, 925–28 (E.D. Mi.1981) (detailing legislative history). However, the section does not contemplate prejudgment interest on the remedial award as well as the unpaid contributions, as the plaintiff requests here.

The court cannot at present formulate a judgment in conformity with § 1132(g)(2).

First, the court does not know whether the collective bargaining agreement at issue here contained a specified rate of interest. If it does not, the rate of interest is the adjusted prime rate of 26 U.S.C. § 6621. Second, the damages claimed in the complaint and the differing amount stipulated to at trial include liquidated damages. The court therefore has no basis to calculate the interest on the unpaid contributions alone.

In summary, the court finds the defendants jointly and severally liable. The Fund is entitled to (1) unpaid contributions, (2) prejudgment interest on the unpaid contributions at the rate set by the collective bargaining agreement or, if none, the adjusted prime rate of 26 U.S.C. § 6621, and (3) a remedial award of liquidated damages under the plan or a second interest award on the unpaid contributions.

The court orders the Fund to prepare within ten days a judgment that is consonant with this opinion.

IT IS SO ORDERED.