**NU–LIFE CONSTRUCTION CORP. and Terminate Control Corp., Plaintiffs,**

**v.**

**BOARD OF EDUCATION OF the CITY OF NEW YORK, DIVISION of SCHOOL BUILDINGS of the BOARD of EDUCATION of the CITY of NEW YORK, Stanley Dobrowolski, John Trapanotto, Stuart Horowitz, John Frisone and Nicholas E. Borg, Defendants.**

**No. CV–86–0807 (ADS).**

United States District Court, E.D. New York.

June 16, 1992.

See also 789 F.Supp. 103.

Kantrowitz and Goldhammer, P.C., Chestnut Ridge, N.Y. (Gary S. Graifman, of counsel), for plaintiffs.

Peltz, Walker & Dubinsky, New York City (Eliot R. Clauss, Ann M. Hetzel, of counsel), for defendant Trapanotto.

Stanley F. Dobrowolski, pro se.

O. Peter Sherwood, Corp. Counsel by John P. Woods, Asst. Corp. Counsel, New York City, for defendants Bd. of Educ. of the City of New York, Div. of School Buildings of the Bd. of Educ., Stuart Horowitz, John Frisone and Nicholas Borg.

## MEMORANDUM DECISION AND ORDER

SPATT, District Judge.

In 1986, the plaintiffs Nu–Life Construction Corp. ("Nu–Life") and Terminate Control Corp. ("Terminate") commenced this action pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO") 18 U.S.C. § 1961 et seq. In effect, there were two separate law suits combined in this case, namely, the Nu–Life suit and the Terminate suit. In addition, the Board of Education counterclaimed against Terminate on a breach of contract claim. On March 10, 1992, after a ten-week trial, a jury returned a verdict in favor of Nu–Life on its RICO conspiracy claim in the amount of $23,400 against the defendants John Trapanotto and Stanley Dobrowolski. However, the jury found in favor of Trapanotto and Dobrowolski on Nu–Life's RICO § 1962(c) claims. The jury also found in favor of the defendant Nicholas E. Borg on Nu–Life's RICO conspiracy claim.

With respect to the Terminate case, the jury returned a verdict in favor of the defendant John Frisone on Terminate's RICO § 1962(c) and conspiracy claims. A verdict was also returned for the defendant Stuart Horowitz on Terminate's RICO conspiracy claim.

Furthermore, the jury returned a verdict for the defendant Board of Education on its counterclaim against Terminate in the amount of $26,800.

At the conclusion of trial, Nu–Life moved pursuant to RICO § 1964(c) for an award of attorney's fees and disbursements incurred in connection with the prosecution of its successful claims against Trapanotto and Dobrowolski.

Presently before the Court for determination is Nu–Life's fee application. Also, the defendant Board of Education contends that pursuant to Local Rule 11(c) it is entitled to certain deposition costs as taxable against Nu–Life. As such, it seeks to ensure that such entitlement is reflected in the judgment at the time of entry. In addition, the Board seeks the entry of final judgment as to the Terminate portion of the judgment. Finally, the defendants Trapanotto and Dobrowolski, in view of the outstanding civil rights claims still pending in this action, move pursuant to Fed. R.Civ.P. 54(b) for a direction that final judgment be entered against them as to the RICO claims, in order that they may take an immediate appeal on that part of the case.

## BACKGROUND

Although under the "American Rule" each party in a lawsuit bears the burden of paying its own attorney's fees, certain statutes provide that a successful party may recover such fees from the adversary (see e.g., *Hensley v. Eckerhart*, 461 U.S. 424, 430, 103 S.Ct. 1933, 1937, 76 L.Ed.2d 40 [1983] ["each party in a lawsuit ordinarily shall bear its own attorney's fees unless there is express statutory authorization to the contrary"]; *Alyeska Pipeline Service Co. v. Wilderness Soc.*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 [1975] ).

Section 1964(c) of RICO provides such statutory authorization to shift the cost of attorney's fees, as follows:

"[a]ny person injured in his business or property by reason of a violation of section 1962 of the this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, *including reasonable attorney's fees*" (emphasis supplied).

In accordance with this section, Nu–Life applies for its attorney's fees incurred in the course of this litigation with regard to the defendants Trapanotto and Dobrowol-

ski, against whom it prevailed. Nu–Life submits that it is entitled to $303,255 in fees incurred in obtaining a verdict against Trapanotto and Dobrowolski. A review of the figures submitted by Nu–Life indicates that the total attorney's fees it claims is actually the sum of $303,235.25. This figure will govern the Court's ultimate determination of the fee awarded. Nu–Life also submits a bill of costs in the sum of $27,-208.46, reflecting the disbursements it alleges were necessary to the prosecution of the law suit. Based on the figures provided by Nu–Life, the total costs incurred actually amounted to $26,308.48.

The defendants Trapanotto and Dobrowolski object to Nu–Life's fee application on the grounds that it fails to supply contemporaneous billing records in sufficient detail so that they can determine which fees sought are attributable to Nu–Life's successful claims against them. In particular, they contend that much of the time spent by Nu–Life at trial and in defending a summary judgment motion made by the Corporation Counsel on behalf of several other defendants is not compensable under the RICO fee-shifting provision. They contend that the legal services rendered by plaintiffs' counsel in opposition to the motion was on behalf of a plaintiff that did not ultimately succeed in the litigation. They object to all but $92,212.75 of the fees sought by Nu–Life. Additionally, they suggest that this lesser figure should be further be reduced by a factor of 25 per cent, resulting in a net fee award of $69,-159.56.

## DISCUSSION

### a. *Attorney's Fees Under RICO*

The fee award provision contained in section 1964(c) of RICO parallels that of section 4 of the Clayton Act, 15 U.S.C. § 15 (*see Aetna Cas. & Sur. Co. v. Leibowitz,* 730 F.2d 905, 907 [2d Cir.1984]). The thrust of each provision is that any person injured in his business or property by reason of a violation of the respective law, either the antitrust laws or RICO, "shall recover … the cost of the suit, including a reasonable attorney's fee" (15 U.S.C. § 15[b]; 18 U.S.C. § 1964[c]).

What constitutes a reasonable attorney's fee under the Clayton Act is first determined by multiplying all reasonable hours expended by the successful party's attorney by a reasonable hourly billable rate (*see U.S. Football League v. National Football League,* 887 F.2d 408, 413 [2d Cir.1989] *cert. denied* 493 U.S. 1071, 110 S.Ct. 1116, 107 L.Ed.2d 1022 [1990]). The product of these figures is often referred to as the "lodestar," which may be subject to further adjustment depending on other factors that a Court may take into consideration when calculating an award of attorney's fees (*see e.g., U.S. Football League, supra,* at p. 415 [citing factors]; *see also Burr v. Sobol,* 748 F.Supp. 97, 99–100 [S.D.N.Y.1990]). For example, in *Hensley v. Eckerhart, supra,* 461 U.S. at p. 435, 103 S.Ct. at p. 1940, the United States Supreme Court suggested that a reduction to the lodestar may be appropriate "[w]here the documentation of hours is inadequate."

### b. *Arriving at the Lodestar*

Central to an application for attorney's fees is the submission of time records reflecting the hours expended by the attorney in pursuing the successful claims of his client. In this circuit, in order for a party to recover attorney's fees, such time records must be made contemporaneously with the associated work (*see Lewis v. Coughlin,* 801 F.2d 570, 577 [2d Cir. 1986]). Furthermore, "[t]hese records should specify, for each attorney, the date, the hours expended, and the nature of the work done" (*New York State Ass'n for Retarded Children, Inc. v. Carey,* 711 F.2d 1136, 1148 [2d Cir.1983]). As a general rule, only the time expended on the plaintiff's successful claims is to be considered in arriving at a fee award (*see Cowan v. Prudential Ins. Co. of America,* 935 F.2d 522, 524 [2d Cir.1991]; *see also, Northeast Women's Center v. McMonagle,* 889 F.2d 466, 470 [3d Cir.1989] *cert. denied sub nom Walton v. Northeast Women's Center, Inc.,* 494 U.S. 1068, 110 S.Ct. 1788, 108 L.Ed.2d 790 [1990]).

In support of their application, counsel for Nu–Life set forth the time expended in pursuing the Nu–Life claims, the billing rates charged for such time and the total sum incurred as a result.

Counsel for Nu–Life chronologically outlined the time expended in this litigation by Gary Graifman, the plaintiffs' lead attorney, from July, 1986 through March, 1992. According to counsel, Nu–Life was billed for his services at the rate of $165 per hour from July, 1986 through July, 1989. During this period 210.85 hours were billed to Nu–Life, resulting in attorney's fees in the amount of $34,790.25. From August, 1989 through the conclusion of trial, Graifman purportedly spent 1,138.9 hours in pursuit of its successful claims, at a rate of $200 per hour for an additional fee of $227,780. His total fee charged in the litigation was $262,570.25.

In addition, Nu–Life seeks reimbursement in the amount of $5,780 for the fees charged by senior associates of counsel's law firm, who billed 28.9 hours at $200 per hour, $25,735 for fees charged by junior associates of the firm, billing 257.35 hours at $100 per hour and $9,150 in paralegal fees for 122 hours at $75 per hour.

In sum, Nu–Life seeks $303,235.25 in attorney's fees based on an aggregate 1,758 hours of work and $26,308.48 in costs for a total award of $329,543.73.

### c. Calculating Reasonable Hours

Initially, the aggregate time submitted by Nu–Life's counsel must be reduced by 80.9 hours. This figure represents time billed to Nu–Life through November, 1987. Although Nu–Life has claimed entitlement to a fee in the amount of $303,235.25 based on 1,758 total billable hours, the number of hours must be reduced to reflect counsel's failure to provide contemporaneous time records for the period of July, 1986 through November, 1987. In this regard, counsel admits that the original records could not be located and seeks to reconstruct the computations for the time expended during this period. However, in light of Coughlin and Carey, this method is not appropriate. Counsel billed at the rate of $165 per hour during this period. As a result, the requested fee award shall be reduced by 80.9 hours at $165 per hour or the sum of $13,348.50.

Furthermore, there is no substantiation for 99.6 hours purportedly expended by counsel sometime between July 31, 1989 and November, 1989. Since no records have been provided for this time, it may not be considered in determining the fee award. This time was billed at a rate of $200 per hour, therefore resulting in a further diminution of the requested award in the amount of $19,920.

Although asserting that 64 hours were expended in the month of March, 1992, Nu–Life's counsel has also failed to provide time records for this period. This time may not be considered by the Court, and, as such, the requested award is further reduced by $12,800.

In addition, as Trapanotto and Dobrowolski point out, certain time devoted to research and trial work included in the application may not be properly attributed to Nu–Life's RICO conspiracy claim. For example, trial work conducted on January 29 and 30, 1992, and February 3, 4, 5, 10, 11 and 12, 1992, was devoted to the Terminate case. From the records provided, it appears that some of this time was included in the Nu–Life fee application. Accordingly, 16.9 hours is deducted from January's bill and 20 hours is deducted from February's bill. These deductions result in a $7,380 diminution of the requested fee.

The aggregate of all the time deducted from Nu–Life's submission amounts to 281.4 hours. 80.9 hours were billed at a rate of $165 per hour and the remaining time was billed at a rate of $200 per hour, which results in an overall deduction of $53,448.50 from the requested attorney's fee. Therefore, for purposes of determining the ultimate fee awarded, the base figure is $249,786.75.

The other portions of Nu–Life's fee application sets forth the time expended on each assignment, the date on which the work was completed and designates the attorney

responsible for such work by that attorney's initials.

■ In this regard, Trapanotto and Dobrowolski object to the descriptions corresponding to many of the time entries. They contend that many of the descriptions are vague and cannot accurately be attributed to the plaintiff's successful claims.

The computerized printouts which comprise much of the documentation provided in support of the fee application offer short, clipped descriptions of the legal work performed. The following is a list of a few of the descriptions:

Legal Research

Work on File

Telephone Call

File Review

Preparation for Trial

■ While vague descriptions such as these are not fatal to a fee application (*see, e.g., Hensley v. Eckerhart, supra,* 461 U.S. at p. 437, 103 S.Ct. at p. 1941 ["Plaintiff's counsel ... is not required to record in great detail how each minute of his time was expended"]; *Burr v. Sobol, supra,* at p. 100 [Court declines to make line-by-line assessment of reasonableness of fee application, noting that "[c]ourts have recognized that this is an unrealistic approach and should be discouraged"]), courts in this circuit have reduced fee awards on the basis of unspecific time records (*see U.S. Football League, supra,* at pp. 415–16; *Carey, supra,* at p. 1146; *Meriwether v. Coughlin,* 727 F.Supp. 823, 827 [S.D.N.Y. 1989]).

Due to the lack of specific record keeping, it is unclear how much time was expended on the unsuccessful claims. For example, there is no mention in the records for time expended during the spoliation hearing in the Terminate case. In light of the numerous entries and the difficulty in matching such entries with the plaintiff's RICO conspiracy claim against Trapanotto and Dobrowolski, the only successful claim, it is appropriate to reduce the base fee award of $249,786.75 by 30 per cent to the sum of $174,850 (*see e.g., U.S. Football*

*League, supra,* at p. 415 [Lodestar reduced 30% due to vague documentation of time entries]; *Carey, supra,* at p. 1146 [5%—20% reductions made to multiple claims for fees upon objections to duplicative and excessive hours]; *Meriwether v. Coughlin, supra,* at p. 830–31 [30% reduction to fees requested and additional 30% reduction to application for costs due to vagueness and inability to match fees with successful claims]).

■ Trapanotto and Dobrowolski further contend that Nu–Life's fee award should be proportional to the jury verdict. However, the Second Circuit has rejected such a "rule of proportionality" in the context of a fee application made under the Civil Rights Attorney's Fees Award Act of 1976, 42 U.S.C. § 1988 (*see Cowan v. Prudential, supra,* at pp. 524–26; *DiFilippo v. Morizio,* 759 F.2d 231, 234 [2d Cir.1985]). In a recent comprehensive review of this subject, in *Cowan,* Judge Pratt stated as follows:

"Reducing the 'lodestar' fee ... simply because [the] plaintiff was unsuccessful in proving damages amounts to a double-discount against the prevailing plaintiff for his lack of monetary success.... [N]othing in the statute or its legislative history requires, or even suggests, that attorney's fees should be proportional to damage awards ..." (*Cowan, supra,* at p. 525–26).

Moreover, other circuits have questioned or rejected the application of a proportionality rule under RICO's fee shifting provision (*see FMC Corp. v. Varonos,* 892 F.2d 1308, 1316 [7th Cir.1990]; *Northeast Women's Center, supra,* at pp. 474–75). In fact, in *Northeast Women's Center,* the Third Circuit rejected a rule of proportionality in the RICO context, analogizing to the Civil Rights Attorney's Fees Award Act. Based on the clear precedent in this Circuit, the Court declines to reduce Nu–Life's fee application notwithstanding the limited pecuniary success achieved by the plaintiff Nu–Life.

■ In regard to the defendants' objection to the time spent by Nu–Life in de-

fending a summary judgment motion made by the Board of Education, the Court declines to parse out what portion of that defense contributed to Nu–Life's successful claims. It would be impracticable, if not impossible, for the Court to attempt to determine how, if at all, Nu–Life's response to the summary judgment motion ultimately affected its successful verdict. As the Supreme Court recognized, "the plaintiff's claims for relief will [often] involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis" (*Hensley, supra,* 461 U.S. at p. 435, 103 S.Ct. at p. 1940).

The defendants would have the Court eliminate from consideration all time expended on the summary judgment motion or attempt to trace back from the verdict what portion of that work contributed to the success on the RICO conspiracy claim. The Court rejects this invitation.

■ Trapanotto and Dobrowolski object to Nu–Life's application for costs for failing to link that portion of the application to its successful claims. The costs and disbursements portion of the application also involves vague and nondescript billing entries. As such, Nu–Life's request in the amount of $26,308.48 is also reduced by a factor of 30%, to a net sum of $18,415.94.

#### d. *Final Judgment Under Rule 54(b)*

During the trial, the Court granted the motion by Nu–Life to amend the complaint to add a cause of action under 42 U.S.C. § 1983 against all the defendants. That cause of action remains to be determined. By letter dated May 14, 1992, defendants Trapanotto and Dobrowolski request that final judgment be entered against them on Nu–Life's RICO conspiracy claim in order to expedite their appeal. Similarly, by letter dated May 15, 1992, the defendant Board of Education requests that final judgment be entered as to the Terminate portion of the judgment in order to expedite the Board's recovery on its counterclaim. By telephone conference held on Monday, June 1, 1992, the Court denied these requests. Fed.R.Civ.P. 54(b) provides that:

> "When more than one claim for relief is presented in an action ... or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon the express direction for the entry of judgment."

■ The determination as to whether to grant Rule 54(b) certification is within the discretion of the district court (*see Hogan v. Consolidated Rail Corp.,* 961 F.2d 1021, 1025 [2d Cir.1992] ). "The district court's discretion, however, is to be exercised sparingly in light of the 'historic federal policy against piecemeal appeals' " (*Hogan, supra,* at p. 1025 *quoting Curtiss–Wright Corp. v. General Elec. Co.,* 446 U.S. 1, 9, 100 S.Ct. 1460, 1465, 64 L.Ed.2d 1 [1980] ).

■ The Supreme Court emphasized that at the heart of a decision on a Rule 54(b) certification motion is " 'the interest of sound judicial administration' " (*Ginett v. Computer Task Group, Inc.,* 962 F.2d 1085, 1092 [2d Cir.1992] *quoting Curtiss–Wright, supra,* 446 U.S. at p. 8, 100 S.Ct. at 1465). Unless the interests of such judicial administration and efficiency would be served, the motion should be denied.

■ In light of the foregoing rules of law and in consideration of the tangled history of this litigation, it is clear that this case does not present a situation in which the interests of judicial administration would be served by allowing the entry of multiple judgments so as to encourage separate appeals. In view of the complexity and longevity of this litigation and given the approaching date for jury selection on the remaining Section 1983 issues, it is, in the Court's view, inappropriate to certify the results of the jury verdict of March 10, 1992, as a final judgment against the defendants Trapanotto and Dobrowolski or against the plaintiff Terminate.

## CONCLUSION

With respect to Nu–Life's request for attorney's fees, as a result of unsubstantiated billing and work inappropriately attributed to the successful RICO conspiracy claims, the sum of $53,448.50 is deducted from the requested fee of $303,235.25 leaving a net balance of $249,786.75. In addition, this balance of $249,786.75 is further reduced by a factor of 30% as result of, among other things, Nu–Life's submission of vague and non-contemporaneous time records. Accordingly, Nu–Life is awarded a total net fee in the amount of $174,850.

Nu–Life's request for $26,308.48 in costs and disbursements is also be reduced by 30% as a result of its failure to particularize the manner in which the expenses relate to the successful claims. Accordingly, Nu–Life is awarded costs in the amount of $18,415.94.

Therefore, the total fee and disbursements allowed to the plaintiff Nu–Life as a prevailing party with regard to its successful RICO verdict, is the sum of $193,265.94.

Finally, "[s]ince federal policy generally disfavors 'piecemeal' appellate litigation ..." (*Ginett v. Computer Task Group, supra*, at p. 1093) and there is nothing exceptional in this case that would require an immediate appeal or would expedite the resolution of the case, the motion by Trapanotto and Dobrowolski, pursuant to Fed. R.Civ.P. 54(b) to enter a partial judgment, is denied.

As to the request of the Board defendants for costs under Local Rule 11(c), the Court declines to rule on that issue until a final judgment has been entered which includes all the claims in the case, including the Nu–Life's Section 1983 claims that have yet to be adjudicated. Additionally, the Board's request that final judgment be entered against the plaintiff Terminate is denied.

Finally, all parties are directed to select a jury on September 14, 1992 at 9:30 a.m., before the United States District Court for the Eastern District of New York at the Uniondale Courthouse, Courtroom A, in connection with Nu–Life's sole remaining Section 1983 claims.

SO ORDERED.