Gina **DeVITO**, Charles **Castelli**, Ralph **Vampini**, and Ruth **Gordon**, as Trustees of Local 1245 General Benefits Funds, Plaintiffs,

v.

**HEMPSTEAD CHINA SHOP, INC.**, Defendant.

No. CV 91–5077 (ADS).

United States District Court, E.D. New York.

Sept. 13, 1993.

Vladeck, Waldman, Elias & Engelhard, P.C., New York City, for plaintiffs (Patricia McConnell, of counsel).

Rains & Pogrebin, P.C., Mineola, NY, for defendant (Mark N. Reinharz, of counsel).

## MEMORANDUM DECISION AND ORDER

SPATT, District Judge.

The plaintiffs brought this action pursuant to 29 U.S.C. §§ 1132 and 1145 ("ERISA") to collect delinquent contributions to the plaintiff Funds under the terms of a collective bargaining agreement with the defendant. The plaintiffs previously moved for summary judgment, seeking an order granting them mandatory relief under 29 U.S.C. § 1132(g)(2). The defendant cross-moved for summary judgment dismissing the complaint and for leave to file a counterclaim.

This Court issued a Memorandum Decision and Order on October 22, 1992, granting summary judgment in favor of the plaintiffs 804 F.Supp. 481. The Court further determined that the defendant was required to pay interest on the unpaid contributions. In that same Order, the Court directed counsel for the plaintiffs to submit an affidavit by November 4, 1992, concerning the issue of attorney's fees as provided in section 502(g)(2)(D) of ERISA. The Court advised counsel for the defendant that he had until November 13, 1992 to respond to the plaintiffs' affidavit.

Based upon questions which arose concerning the issues of interest and attorney's fees, the Court conducted a status conference on November 24, 1992. At that time, counsel for both sides advised the Court of the parties' agreement that the amount of delinquent contributions due the plaintiff Funds, pursuant to the Court's October 22, 1992 decision, was $55,302.00, covering the period from April, 1989 through March, 1992. However, the parties were unable to agree on the amount of interest and attorney's fees. The Court gave both sides additional time to submit papers. The Court now addresses the two issues of attorney's fees and interest.

## I. Calculation of Interest

The Employee Retirement Income Security Act ("ERISA") in its enforcement section provides as follows:

"§ 1132. Civil enforcement

\* \* \* \* \* \*

(g) Attorney's fees and costs; awards in actions involving delinquent contributions

\* \* \* \* \* \*

(2) In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court *shall* award the plan—

(A) the unpaid contributions,

(B) *interest on the unpaid contributions,*

(C) an amount equal to the greater of—

(i) *interest on the unpaid contributions,* or

(ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent ... of the amount determined by the court under subparagraph (A)

(D) *reasonable attorney's fees and costs* of the action, to be paid by the defendant...."

"For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed

under section 6621 of Title 26" (29 U.S.C. § 1132[g][2] ) (emphasis supplied).

■ The language of Section 1132(g) is mandatory, and once the provision applies, the district court must award liquidated damages (*see Benson v. Brower's Moving & Storage, Inc.*, 726 F.Supp. 31, 36 [E.D.N.Y.1989], *aff'd*, 907 F.2d 310 [2d Cir.], *cert. denied*, 498 U.S. 982, 111 S.Ct. 511, 112 L.Ed.2d 524 [1990]; *McDonald v. Centra, Inc.*, 946 F.2d 1059, 1065 [4th Cir.1991], *cert. denied*, —— U.S. ——, 112 S.Ct. 2325, 119 L.Ed.2d 244 [1992]; *Michigan Carpenters Council v. C.J. Rogers, Inc.*, 933 F.2d 376 [6th Cir.1991]; *Idaho Plumbers & Pipefitters v. United Mechanical Contractors, Inc.*, 875 F.2d 212, 215 [9th Cir.1989] ). Therefore, based upon the language of 29 U.S.C. § 1132(g)(2)(A) and (B), once judgment in favor of the plan has been awarded by the Court, the plan is entitled to both the unpaid contributions and interest on the unpaid contributions.

■ In discussing the "interest" provision of the statute, the Second Circuit has noted the following:

"… 29 U.S.C. § 1132(g)(2) explicitly states that 'interest on unpaid contributions shall be determined by using the rate provided under the plan' or if none is specified, at a statutorily prescribed rate based on an adjusted prime rate figure. 26 U.S.C. § 6621 (1982). The statute itself allows plans to include a 20% liquidated damages provision, 29 U.S.C. § 1132(g)(2)(C)(ii), so it could hardly be considered against public policy for the parties to agree to a rate of 2% above the prime rate" (*O'Hare v. General Marine Transport Corp.*, 740 F.2d 160, 170 [2d Cir.1984], *cert. denied*, 469 U.S. 1212, 105 S.Ct. 1181 [84 L.Ed.2d 329] [1985] ).

The statute therefore provides for a double interest payment or alternative liquidated damages to compensate a multiemployer benefit fund plan for costs incurred in connection with delinquencies (*O'Hare*, *supra*, at p. 171).

In this case, the plaintiff states that the plan of the General Benefits Fund of Local 1245 does not provide a rate of interest. Nor does it appear that there is any applicable provision in the collective bargaining agreement. Counsel for the plaintiff fund has therefore applied the rate prescribed in 26 U.S.C. § 6621, and has arrived at the following rates for the periods in question:

| | |
|---|---|
| · Apr. 1, 1989–June 30, 1989 | 12% |
| · Jul. 1, 1989–Sep. 30, 1989 | 12% |
| · Oct. 1, 1989–Dec. 31, 1989 | 11% |
| · Jan. 1, 1989–March 31, 1990 | 11% |
| · Apr. 1, 1990–June 30, 1990 | 11% |
| · Jul. 1, 1990–Sep. 30, 1990 | 11% |
| · Oct. 1, 1990–Dec. 31, 1990 | 11% |
| · Jan. 1, 1991–March 31, 1991 | 11% |
| · Apr. 1, 1991–June 30, 1991 | 10% |
| · Jul. 1, 1991–Sep. 30, 1991 | 10% |
| · Oct. 1, 1991–Dec. 31, 1991 | 10% |
| · Jan. 1, 1992–March 31, 1992 | 9% |
| · Apr. 1, 1992–June 30, 1992 | 8% |
| · Jul. 1, 1992–Sep. 30, 1992 | 8% |
| · Oct. 1, 1992–Dec. 31, 1992 | 7% |

The defendant has not contested these rates.

■ However, the parties do have opposing viewpoints with regard to when interest on the unpaid contributions begins to run. The plaintiff contends that interest is to be calculated from the date of the deficiency until the deficiency is paid and relies on the Sixth Circuit's holding to that effect in *Laborers' Pension Trust Fund v. Sidney Weinberger Homes, Inc.*, 872 F.2d 702, 706 (6th Cir.1988). The defendant, on the other hand, argues that interest on the contributions begins to run only when the Fund demands payment of the contributions, relying on *New York State Teamsters Council Health and Hospital Fund v. City of Utica*, 643 F.Supp. 619 (N.D.N.Y.1986). Acknowledging that there is a split in authority in determining when interest on contributions begins to run, counsel for the defendant urges the Court to exercise its discretion and calculate interest from the date of demand. So far as the defendant is concerned, no "demand" was made until April 17, 1991, when counsel for Local 1245 wrote a letter to Henry Ponoroff of Hempstead China stating that Local 1245 was demanding payment of the full indebtedness of $19,732.00.

■ The Court looks to the terms of the collective bargaining agreement, and in particular to Section 14, which provides as follows:

*"Health Contributions*

A. The Employer *shall on the tenth (10th) day of each and every month during the period of this Agreement* contribute to Local 1245 General Benefit Fund the following amounts to insure and protect the health benefits presently enjoyed by the employees...." (emphasis supplied).

Clearly, by its terms, the agreement mandates that contributions are due on the date that they are required to be received by the Fund. It follows, then, that the contributions are delinquent once that date has come and gone. Since interest is available on unpaid or delinquent contributions, it is this "due date" which is the applicable commencement date for the accrual of interest (*see New York State Teamsters Conference and Retirement Fund v. Erick Sanitation,* 1992 WL 246880 *2 [N.D.N.Y. Sept. 18, 1992]; *Local No. 626 v. M & L Construction Corp.,* 1990 WL 44939, LEXIS 4282 [E.D.Pa. April 11, 1990]).

Contrary to the defendant's position, the Court can find no language in the ERISA statute nor in the agreement that requires a written demand (*see Corbett v. Ferrara Delivery, Inc.,* 1990 WL 512395 *1, 1990 U.S.Dist. LEXIS 5223 *3 [S.D.N.Y. May 4, 1990]). Even if such a demand were to be read into the statute, the Court finds that the plaintiff has satisfied such a demand by the monthly written notices sent by the Fund stating the specific amounts due (see Declaration of Frank DeVito). In addition, the Court finds the circumstances in *New York State Teamsters Council Health and Hospital Fund v. City of Utica,* 643 F.Supp. 619 (N.D.N.Y.1986) clearly distinguishable. In *City of Utica,* the plaintiff Fund was authorized to audit the defendant's payroll records at a mutually convenient time in order to determine whether the defendant was complying with the terms of the agreements (*id.* at p. 621). During one of those audits, the Fund became aware of certain unpaid contributions, one segment of which was the result of alleged bookkeeping errors. In awarding judgment for the Fund, the District Court held that the plaintiffs were entitled to interest and liquidated damages, but that the interest would run from the date on which the Fund first notified the defendant of the discrepancies. Unlike Hempstead China, the defendant in *City of Utica* had been making the required contributions, but the amount was contested. The defendant became aware of the problem through an audit and subsequent notification by the Fund—unlike the monthly notices to Hempstead China by Local 1245 of the precise amount of contributions due and owing.

Attached to the affidavit of counsel for the plaintiffs as Exhibit C are the rates of interest by time period and the detailed corresponding dollar amounts, which the Court lists here in summary fashion:

| Contribution Period | Amount of Contribution | Interest Owed |
|---|---|---|
| April 1989 | $ 832.00 | $ 308.54 |
| August 1990 | 2890.00 | 634.20 |
| September 1990 | 2915.00 | 612.95 |
| October 1990 | 2775.00 | 558.21 |
| November 1990 | 2660.00 | 510.57 |
| December 1990 | 2635.00 | 481.61 |
| January 1991 | 2745.00 | 476.57 |
| February 1991 | 2670.00 | 439.08 |
| March 1991 | 2670.00 | 414.60 |
| April 1991 | 2670.00 | 391.58 |
| May 1991 | 2940.00 | 405.88 |
| June 1991 | 3160.00 | 425.73 |
| July 1991 | 2975.00 | 361.14 |
| August 1991 | 2705.00 | 305.82 |
| September 1991 | 2950.00 | 308.94 |
| October 1991 | 2655.00 | 255.92 |
| November 1991 | 2520.00 | 221.90 |
| December 1991 | 2520.00 | 200.90 |
| January 1992 | 2545.00 | 182.40 |

| February 1992 | 2435.00 | 156.25 |
| March 1992 | 2435.00 | 137.99 |

Total Interest Through November 30, 1992:

$7790.78

---

Therefore, the Court finds that the plaintiffs are entitled to interest on the unpaid contributions in the amount of $7,790.78.

█ In addition to the interest on the unpaid contributions, the plaintiff is also entitled, under section 1132(g)(2)(C), to the greater of the interest or liquidated damages in an amount not to exceed 20%. The General Benefits Fund Plan does not specify an amount of liquidated damages. Therefore, the Court finds that the plaintiffs are entitled to an award of "double interest" on the unpaid contributions, for an additional amount of $7,790.78 (see *New York State Teamsters Conference and Retirement Fund v. Erick Sanitation, supra,* at *11); see also *Onondaga County Laborers' Health, Welfare, Pension, Annuity and Training Funds v. Sal Masonry Contractors, Inc.,* 1992 WL 75051 *6 [N.D.N.Y. April 7, 1992]; *Laborers' Pension Trust Fund–Detroit and Vicinity v. Family Cement Co.,* 677 F.Supp. 896 [E.D.Mich.1987]).

*Diduck v. Kaszycki & Sons Contractors, Inc.,* 774 F.Supp. 802 [S.D.N.Y.1991], is not controlling in this matter as the defendant contends. In *Diduck,* the Court found that ERISA's double interest liquidated damages provision did not apply in an action by a fund to collect employer contributions because the liability of the defendants was premised upon their breach of fiduciary duty in connection with submissions of false steward report which omitted undocumented Polish workers. These circumstances do not fall within the coverage of section 1132(g)(2).

## II. *Attorney's Fees*

Before turning to the specific arguments enunciated by the parties concerning the amount of reasonable fees in this case, the Court must resolve an initial controversy. The defendant argues that the Court must apply the five-factor test set forth by the Second Circuit in (*Chambless v. Masters, Mates & Pilots Pension Plan,* 885 F.2d 1053, 1056–57 [2d Cir.1989], cert. denied, 496 U.S. 905, 110 S.Ct. 2587, 110 L.Ed.2d 268 [1990]). However, *Chambless* dealt with a challenge to a pension plan amendment which postponed and reduced the plaintiff's pension rights—not delinquent contributions owed by an employer. The request in *Chambless* for attorney's fees was made pursuant to 29 U.S.C. § 1132(g)(1), which states as follows:

"(1) In any action under this subchapter (*other than an action described in paragraph (2)* ) by a participant, beneficiary, or fiduciary, the court *in its discretion may allow* a reasonable attorney's fee and costs of action to either party" (emphasis supplied).

█ In contrast, the action before the Court involves the mandatory fee-shifting provision of the ERISA statute for plaintiffs who prevail in actions brought to enforce section 1145 concerning contributions to multiemployer plans (see *Rodriguez v. Meba Pension Trust,* 956 F.2d 468 [4th Cir.1992]). Therefore, this action falls within the exception—it is a claim "described in paragraph (2)." As a result, the award of attorney's fees in this case is mandatory rather than discretionary (see *Benson v. Brower's Moving & Storage,* 907 F.2d 310, 316 [2d Cir. 1990]; *Local 445 Welfare Fund v. Wein,* 855 F.2d 62, 64 [2d Cir.1988]; *Brentwood Financial Corp. v. Western Conference of Teamsters Pension Trust Fund,* 902 F.2d 1456 [9th Cir.1990]).

Both subsection C ("double interest") and subsection D (attorney's fees) of section 1132(g)(2) were included to penalize the delinquent payor for imposing the necessity of a suit to collect (*Carriers Container Council, Inc. v. Mobile Steamship Assoc., Inc.,* 948 F.2d 1219, 1223 [11th Cir.1991]). Since the Court has no discretion to do otherwise, there is no need for any analysis of the *Chambless* factors (see *Board of Trustees of*

*Trucking Employees of North Jersey Welfare Fund, Inc. v. Centra,* 983 F.2d 495 [3d Cir.1992] ).

The determination of a reasonable fee award under Section 1132(g)(2)(D) of ERISA lies within the sound discretion of the district judge (see *M.M. & P. Pension Plan v. Aetna Life & Cas. Co.,* 670 F.Supp. 1199, 1208–09 [S.D.N.Y.1987] ). The Second Circuit has adopted the lodestar method to determine the amount of attorney's fees to be awarded in ERISA actions (see *New York State Teamsters Conference and Retirement Fund v. Erick Sanitation, Inc.,* 1992 WL 246880 *4 [N.D.N.Y.1992], citing *Chambless, supra* 885 F.2d at 1058). Under the lodestar method, a court must multiply the compensable hours by the reasonable rate and make any necessary upward or downward adjustment. The burden is on the fee applicant to establish both the reasonable rate and the number of hours worked (*id.*).

A reasonable attorney's fee

"is one calculated on the basis of rates and practices prevailing in the market, *i.e.,* 'in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation,' [citation omitted], and one that grants the successful civil rights plaintiff a 'fully compensatory fee,' [citation omitted], comparable to what 'is traditional with attorneys compensated by a fee-paying client.'" (*Missouri v. Jenkins,* 491 U.S. 274, 286, 109 S.Ct. 2463, 2470 [105 L.Ed.2d 229] [1989] [citation omitted]. *See also Blum v. Stenson,* 465 U.S. 886, 895–96 & n. 11, 104 S.Ct. 1541, 1547–48 & n. 11. [79 L.Ed.2d 891] [1984].)

The amount of an award, however, must ultimately be determined on the facts of each case (*Hensley v. Eckerhart,* 461 U.S. 424, 429, 103 S.Ct. 1933, 1937, 76 L.Ed.2d 40 [1983] ).

Counsel for the plaintiff requests attorney's fees in the amount of $44,743.75, calculated at varying hourly rates for one partner and three associates. This application is based upon counsel's position that the case "[i]n the Court's words ... raised 'a novel issue' of an employer's obligation to contribute following a reduction in benefit levels as a result of the abrupt departure of the Fund's major employer" (McConnell Affidavit, ¶ 2).

The plaintiffs' application requests compensation for approximately 243.75 attorney-hours broken down according to the following hours and rates:

| Attorney | Original Hours Req. By Counsel | Requested Rate | Total |
|---|---|---|---|
| McConnell (Partner) | 118.25 | $225 | $26,606.25 |
| Tichy (Associate) | 98.00 | 150 | 14,700.00 |
| Clark (Associate) | 22.25 | 125 | 2,781.25 |
| Gumpel (Associate) | 5.25 | 125 | 656.25 |
| TOTAL: | | | $44,743.75 |

Counsel for the defendant employer opposes the fee application and states that the defendant's small business has suffered during the recession and that "a $44,000 fee award would be an extremely heavy burden to bear" (Reinharz Affidavit, ¶ 11). He specifically points to the fact that there is no deterrent effect in this case because the defendant Hempstead China no longer participates in the fund. Among the other arguments which counsel asks the Court to consider are that the Hempstead China employees will gain little if anything from this litigation and that the fee request is disproportionate to the magnitude of the issues. For this latter proposition, counsel relies upon *Fur Mfg. Industry Retirement Fund v. Getto & Getto, Inc.,* 11 Employee Ben. Cas. (BNA) 1561, 1989 WL 90801 (S.D.N.Y.1989), in which Judge Mukasey found that a Fund

which prevailed in an ERISA action was not entitled to the full amount of attorney's fees it had sought because of the disparity between the requested fee award and the complexity of the matter under review.

The Court has reviewed the applicable law in this Circuit and determines that, based upon the type of work performed and the experience of the attorneys, the following maximum rates are fair and reasonable: for partner Patricia McConnell, $200 per hour; for Associate Tichy, $150 per hour; for Associates Gumpel and Clark, $125 per hour (*see, e.g., Cruz v. Local Union Number 3*, CV 89–4240, 1993 WL 262676 [E.D.N.Y. July 12, 1993] [Spatt, J.]; *Huntington Branch NAACP v. Town of Huntington*, 749 F.Supp. 62, 65 [E.D.N.Y.1990];. *Jennette v. New York*, 800 F.Supp. 1165, 1169 [S.D.N.Y.1992]; *Nu-Life Constr. Corp. v. Board of Educ.*, 795 F.Supp. 602, 606 [E.D.N.Y.1992] ). Therefore, the hours submitted by the attorneys at the lodestar rate determined by the Court are as follows:

| Attorney | Original Hours Req. By Counsel | Lodestar Rate | Total |
|---|---|---|---|
| McConnell (Partner) | 118.25 | $200 | $23,650.00 |
| Tichy (Associate) | 98.00 | 150 | 14,700.00 |
| Clark (Associate) | 22.25 | 125 | 2,781.25 |
| Gumpel (Associate) | 5.25 | 125 | 656.25 |
| | | TOTAL: | $41,787.50 |

The Court finds that the number of hours for which plaintiffs' counsel seek compensation, specifically, 243.75 hours spent by the four attorneys on this case, is unreasonable (*see Huntington Branch NAACP v. Town of Huntington*, 749 F.Supp. 62 [E.D.N.Y.1990]; *Bygott v. Leaseway Transportation Corp.*, 637 F.Supp. 1433, 1444 [E.D.Pa.1986] ). Giving plaintiffs' counsel every benefit, the Court cannot view the expenditure of 602 attorney-hours as necessary or reasonable.

In reviewing the case file, the Court notes that a total of approximately 35 documents are recorded as the full record of this case. The complaint is four and one-half pages in length and consists of a straightforward claim of an "action brought by fiduciaries of a multi-employer welfare benefit plan to enforce the provisions of a collective bargaining agreement and statutory obligations imposed on the defendant by Section 515 of ERISA, 29 U.S.C. § 1145" (Complaint, ¶ 3). The Answer is two pages long. The parties participated in three status conferences before the Magistrate Judge, several of which occurred by telephone.

The bulk of the work done in this case was related to the filing and argument of the plaintiff Trustees motion for summary judgment and the defendant's motion for summary judgment and for leave to amend to add a counterclaim. No trial work was involved. The Court reserved decision on the motions after the oral argument and issued a written opinion on October 22, 1992. In that opinion, the Court directed the parties to submit affidavits concerning reasonable attorney's fees. Subsequently, the Court held a conference with the parties concerning the issues of interest on the delinquent contributions and attorney's fees. Although the Court finds the efforts of plaintiffs' counsel commendable, it does not find the $44,743.75 fee reasonable under the circumstances.

▮ Notwithstanding the Court's agreement that this case raised a "novel" issue, the Court does not agree with the assertion by counsel for the plaintiffs that the hours expended are reasonable because of such "novelty" nor based on the "complexity of the legal issues raised by the defendant's defenses" (McConnell Affidavit, ¶ 18). The contemporaneous records kept by the attorneys "should specify, for each attorney, the date, the hours expended, and the nature of the work done" (*New York State Ass'n for*

*Retarded Children, Inc. v. Carey,* 711 F.2d 1136, 1148 [2d Cir.1983] ). "The burden is on counsel to keep and present records from which the court may determine the nature of the work done, the need for it, and the amount of time reasonably required; where adequate contemporaneous records have not been kept, the court should not award the full amount requested" (*F.H. Krear & Co. v. Nineteen Named Trustees,* 810 F.2d 1250, 1265 [2d Cir.1987] [applying New York State law and noting that the Second Circuit rule is similar to that of New York]; *see also Soler v. G & U Inc.,* 801 F.Supp. 1056 [S.D.N.Y. 1992] ).

After reviewing the contemporaneous time sheets submitted by the plaintiffs, a significant portion of which are not sufficiently detailed, the Court finds that there is duplication of effort, beyond what counsel states has already been accounted for and deducted. For example, the Court is able to decipher at least sixteen entries, divided among at least three attorneys, which make reference to "draft" or "revise" or "review" "De-Vito Affidavit." The hours for those entries, which in some instances admittedly are joined with other types of work, total 63.75 hours. The Court finds such expenditure of time beyond the bounds of reasonableness. In addition, the Court declines to award fees for "travel" time.

While vague descriptions are not fatal to a fee application, courts in this Circuit have reduced fee awards due to the lack of specificity in time records (*see United States Football League v. National Football League,* 887 F.2d 408, 415 [2d Cir.1989]; *New York State Ass'n for Retarded Children, Inc. v. Carey, supra,* 711 F.2d at p. 1146; *Soler v. G & U, Inc., supra,* 801 F.Supp. at pp. 1060–61; *Nu–Life Constr. Corp. v. Board of Educ., supra,* 795 F.Supp. at p. 607; *Meriwether v. Coughlin,* 727 F.Supp. 823, 827 [S.D.N.Y.1989] ). In light of the duplication described, the insufficient descriptions of some of the work done and the necessity for such work, the disallowance of travel time, and the overall sum achieved for the plaintiffs, the Court reduces the lodestar amount by forty percent (*see Nu–Life Constr. Corp. v. Board of Educ., supra,* 795 F.Supp. at p. 607 [thirty percent reduction for vague entries]; *see also United States Football League v. National Football League, supra,* 887 F.2d at p. 415 [thirty percent reduction due to, *inter alia,* vague entries]; *New York State Ass'n for Retarded Children, Inc. v. Carey, supra,* 711 F.2d at p. 1146 [5%–20% reductions made to multiple claims for fees upon objections to duplicative and excessive hours] ). This reduction results in the following sum as attorney's fees:

| | |
|---|---:|
| · Hours submitted at lodestar rate approved by the Court | $41,787.50 |
| · Reduction of 40% | − 16,715.00 |
| TOTAL: | $25,072.50 |

---

The Court therefore awards the plaintiffs the total sum of $25,072.50 for all attorney's fees. The Court has reviewed the remaining objections of the defendant employer and finds them to be without merit.

With regard to the plaintiffs' application for costs and disbursements, a court will generally award "those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee paying clients" (*Reichman v. Bonsignore, Brignati & Mazzotta, P.C.,* 818 F.2d 278, 283 [2d Cir.1987] ). "A prevailing party may be reimbursed for expenditures which add to the proceeding and are not part of the attorney's ordinary overhead" (*New York State Nat'l Org. for Women v. Terry,* 737 F.Supp. 1350, 1363) [S.D.N.Y.1990].

The Court has reviewed the affidavit of counsel listing costs and disbursements in the amount of $1,292.39, although no actual bills or records have been included. The Court declines to award costs for "Transportation," "Messenger Service," "Express

Mail/Federal Express," "Fax," "Photocopies," or "LEXIS." However, the Court does award costs for the purchase of an index number and the remaining disbursements, for a total sum of $153.10.

### CONCLUSION

For the foregoing reasons, the Clerk of the Court is directed to enter judgment in favor of the plaintiffs in the total sum of $96,109.16, as follows: (1) the sum of $55,302.00 for delinquent contributions; (2) interest from the date contributions became due through November 30, 1992, in the amount of $7,790.78, with interest to continue to accrue until the judgment is satisfied; (3) double interest in the amount of $7,790.78; (4) attorney's fees in the amount of $25,072.50; and (5) costs and disbursements in the amount of $153.10.

**SO ORDERED.**